THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Respondent, *v.* NATIONAL BANK OF COMMERCE IN NEW YORK, Appellant.

**Bills, notes and checks — forgery — action by drawer of checks to recover from bank, which paid checks on indorsements forged by drawer's agent who afterward indorsed in his own name for his own account — indorsement by agent not guaranty of validity of forged indorsements binding on drawer — failure of drawer, having knowledge of other forgeries of its agent, to notify bank — when effect of such failure question of fact for the jury — erroneous exclusion of evidence.**

1. Where plaintiff, a life insurance company, sent its checks drawn on the defendant bank to its general manager and agent for delivery to its policyholders, to whom they were made payable, and the agent forged the names of the payees, deposited the same to his personal account in a bank where he had an account and converted the proceeds thereof to his own use, and the defendant bank has refused to repay to plaintiff the amount of such checks, which were paid by it, the defendant cannot, in an action to recover the amount, avoid its liability on the ground that the plaintiff is precluded from asserting the forgery of the payees' names on such checks because the general manager and agent of the plaintiff by his indorsement of the checks guaranteed the genuineness of the indorsements of the payees, and that the plaintiff is bound thereby. The manager of plaintiff in forging the names of the payees of the checks and his indorsements of the checks following the forged indorsements was acting independently of his agency and in violation of the same, and hence the plaintiff is not responsible therefor. The guaranty of the genuineness of the indorsements of the payees by the manager's subsequent indorsements of such checks was the personal guaranty of the manager and not that of the plaintiff.

2. Where it appears that, prior to the transactions in question, the plaintiff's general manager and agent had forged signatures to other checks in the same way and that the plaintiff had, or, with reasonable investigation, might have had knowledge thereof; that actual proof of the forgery of one of the checks in question was in plaintiff's possession in time for it to have stopped the payment thereof, and that the manager had confessed and made good to plaintiff part of its losses due to such forged indorsements, it was a question for the jury to determine whether the plaintiff was negligent in failing to examine

the indorsements on the checks which had been returned to it by the defendant and other banks with the genuine signature of the payees in its possession prior to the payment of the forged checks in question and whether such negligence and the consequent failure of the plaintiff to notify the defendant of the information that it would have obtained by such examination contributed to the payment of the forged checks by the defendant.

3. It was also a question for the jury herein whether, after plaintiff knew or should have known that its manager had forged the payee's indorsement on another check, which plaintiff thereafter made good to the payee, the plaintiff was negligent in failing to notify the defendant of such facts and the consequent danger of paying other checks, sent by the plaintiff to its manager for delivery to the payees, without special information and knowledge in regard to the genuineness of the payees' indorsements thereon.

4. It was error for the trial court to exclude reasonable evidence tending to show that the amount recovered by the plaintiff from its general manager, after the defendant bank had paid the forged checks in question, included a repayment to it of the amounts in whole or in part charged to the plaintiff by reason of defendant's payment of the forged checks in question, and also whether the defendant was prejudiced by the plaintiff's act in withholding its knowledge of the crimes of its general manager until after his arrest therefor.

*Prudential Ins. Co.* v. *Nat. Bank of Commerce*, 184 App. Div. 885, reversed.

(Argued December 5, 1919; decided January 6, 1920.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 10, 1918, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank Parker Ufford* for appellant.   The indorsement of the checks by the plaintiff's agent Eaton was equivalent to a guaranty of the genuineness of the prior indorsements which the plaintiff is estopped to deny, and the plaintiff is precluded thereby, as a matter of law, from recovering in this action.   (*London L. Ins. Co.* v. *Molson's*

*Bank,* 5 Ontario L. R. 407; *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31.). The trial court erred in holding that there was no evidence of negligence on the part of the plaintiff and in directing a verdict against the defendant. (*Morgan* v. *U. S. Mort. & Trust Co.,* 208 N. Y. 218; *Meyers* v. *S. W. Nat. Bank,* 193 Penn. St. 1; *Leather Mfrs. Bank* v. *Morgan,* 117 U. S. 96; *N. B. & M. Ins. Co.* v. *Merchants Nat. Bank,* 161 App. Div. 341.) The plaintiff's concealment of the forgeries after it discovered them precludes a recovery. (*Leather Mfrs. Nat. Bank* v. *Morgan,* 117 U. S. 96; *Rothschild* v. *Title G. & T. Co.,* 204 N. Y. 458.) The indorsement of the checks by the plaintiff's agent, Eaton, acting within the apparent scope of his authority, was equivalent to a guaranty of the genuineness of the prior indorsements which the plaintiff is estopped to deny. (*London Life Ins. Co.* v. *Molson's Bank,* 5 Ontario L. R. 40; *Campbell* v. *Upton,* 66 App. Div. 434; 171 N. Y. 644; *Goshen Nat. Bank* v. *State,* 141 N. Y. 379.) The evidence of negligence required the submission of the case to the jury. It was error to direct a verdict. (*Shipman* v. *Bank of New York,* 126 N. Y. 318.)

*R. Dulany Whiting* for respondent. The plaintiff is not responsible for nor to be bound by the act of Eaton, its agent, in the forgery of the payees' indorsements upon the checks in suit. (*Welsh* v. *German American Bank,* 91 N. Y. 74; *Henry* v. *Allen,* 151 N. Y. 11.) There was no negligence on the part of the plaintiff adduced upon the trial which would have justified the court in submitting the case to the jury. (*N. B. & M. Ins. Co.* v. *Merchants Nat. Bank,* 161 App. Div. 341; *Prudential Life Ins. Co.* v. *National Bank of Commerce,* 177 App. Div. 438; *Metallurgical Securities Co.* v. *M. & M. Nat. Bank,* 171 App. Div. 321; *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219; *Harlem Building Assn.* v. *Mercantile Co.,* 10 Misc. Rep. 680; *Carpenter* v. *Stillwell,* 11 N. Y. 161; *Hamlin* v. *Sears,* 82 N. Y. 327.)

CHASE, J.   The plaintiff is an insurance corporation having its principal place of business in Newark, New Jersey.  In 1912 and prior to that time, one Eaton was its manager and agent for the states of Maine and New Hampshire, and had his office at Portland, Maine.  In the course of the plaintiff's business and on March 18, 1912, it sent to Eaton at Portland a check drawn on the defendant bank to the order of Rena C. Phipps for $1,983.26, dated on that day which stated on the face of the check that it was " In full for all claims under policy No. 164,163 " (being a policy in which said Phipps was the beneficiary), and on the 24th day of March, 1912, another check on said bank to the order of Ella M. Wade for $1,633.70, on the face of which was a similar statement to the effect that it was in full of a specified policy.  Said checks were sent to Eaton to be delivered by him to the payees thereof but instead of delivering the checks in accordance with his instructions he, in each case, forged the name of the payee to the check and deposited the same *to his personal account* with the Fidelity Trust Company of Portland, Maine, and converted the proceeds thereof to his own use.  The Phipps check was paid by the defendant on March 20, 1912, and the Wade check on March 28, 1912.  The plaintiff demanded of the defendant that it return the amount so paid on said checks to it, but the defendant has neglected and refused to do so.  This action is brought to recover the amount of said checks with interest.  The trial court directed a verdict in favor of the plaintiff and the judgment entered thereon has been unanimously affirmed by the Appellate Division.

The Negotiable Instruments Law (Chapter 38 of the Consolidated Laws) provides: " Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge

33

therefor, or to enforce payment thereof, against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." (Sec. 42.) It is conceded that the name of the payee in each of said checks was forged thereon by Eaton, and that he also personally indorsed said checks and that they were paid by the defendant as stated.

The defendant claims that the plaintiff is precluded from asserting in this action the forgery of the payee's name on said checks respectively, because Eaton, the manager and agent of the plaintiff, as stated, by his indorsement of the checks guaranteed the genuineness of the indorsement of the payees, and that the plaintiff is bound thereby.

The defendant's claim in substance is that Eaton by personally indorsing the checks in legal effect said to the trust company and all subsequent holders of the checks and to the defendant that the signatures of the payees on the checks and each of them was the genuine signature of such payee and that he guaranteed the same and also that as Eaton was the representative of the plaintiff at Portland his representation and guaranty was the representation and guaranty of the plaintiff company.

The defendant bases its claim in large part upon the reasoning and conclusion stated in *London Life Insurance Company* v. *Molsons Bank* (5 Ont. L. Rep. 407) which is a report of a case at a trial of the issues therein before a judge without a jury. The decision in that case so far as it supports the contention of the defendant is not in accord with the decisions of this court.

This court in *Welsh* v. *German American Bank* (73 N. Y. 424) say: " The fact that the plaintiff entrusted checks to his clerk * * * who forged the endorsements, made him no more responsible than if he had entrusted them to an expressman * * * and the expressman had forged the name of the payee."

And in *Henry* v. *Allen* (151 N. Y. 1, 11) this court say: " When an agent abandons the object of his agency and acts for himself by committing a fraud for his own exclusive benefit, he ceases to act within the scope of his employment and to that extent ceases to act as agent.". (See *Shipman* v. *Bank of the State of N. Y.*, 126 N. Y. 318; *Frank* v. *Chemical National Bank of N. Y.*, 84 N. Y. 209.) Eaton had no apparent authority as *an agent of the plaintiff* to acquire the checks for deposit *in his personal account.*

We are of the opinion that Eaton in forging the names of the payees of the checks and his indorsement of the checks following such forged indorsements, was acting independently of his agency and wholly in violation of the same, and that the plaintiff is not responsible therefor. The guaranty of the genuineness of the indorsement of the payees by reason of Eaton's subsequent indorsement of such checks was the personal guaranty of Eaton and not that of the plaintiff.

It is also claimed by the defendant that the plaintiff is precluded in this action from setting up the forgeries by Eaton of the checks under consideration because of its negligence in sending such checks to Eaton after knowledge of his previous forgeries and misapplication of its money or of facts which required the plaintiff to have made further inquiry and investigation into his acts before sending him such further checks.

It is also claimed by the defendant that the record discloses such conduct on the part of Eaton of which the plaintiff had knowledge or ought to have had knowledge before the checks under consideration were paid as required it in good faith and fair dealing to have informed the defendant not to pay such checks or at least which required the plaintiff to disclose to the defendant the possibility of irregularities or forgeries by Eaton in connection with checks sent by it to its Portland office that the defendant might have had an opportunity for special

investigation of the indorsement of such checks before paying them.

Eaton had held his position with the plaintiff at the time of the forgeries of the two checks under consideration for about four years. Such forgeries were among the last of a long series of fraudulent and criminal acts in connection with his position as a district manager and agent of the plaintiff. As long prior to 1912 as the early part of 1910 one of the plaintiff's policyholders made application to Eaton for a loan by the plaintiff. An application therefor was forwarded to the plaintiff and passed upon favorably, which resulted in a check for the amount of the loan payable to the policyholder being sent to Eaton. He forged the name of the payee on that check and deposited it in his personal account in the Fidelity Trust Company. Some time thereafter the policyholder who had not received the amount of the loan wrote to the plaintiff making complaint because of the delay. The plaintiff wrote to Eaton sending him a copy of the letter of the policyholder. Eaton forwarded his personal check to the policyholder and wrote the plaintiff that payment had been made. The check of the plaintiff bearing the forged indorsement of the payee's name must have been in its possession when the letter of complaint was received, and the plaintiff, with the genuine signature of the policyholder on the application for the loan in its possession, could have known of the forgery by Eaton, if it had made any reasonable investigation of the check and documents in its possession. Similar forgeries by Eaton continued thereafter from time to time and became more and more frequent until during the six months prior to March, 1912, Eaton forged the payee's indorsement on substantially every check that was forwarded to him for delivery to policyholders. It appears that Eaton forged the signature of the payee on one hundred or more of such checks.

Eaton collected the premiums on the plaintiff's policies

in the states mentioned. A thirty-day period of grace
was allowed the policyholders after the premiums were
due. Eaton took advantage of this fact to use the
premiums promptly paid, for himself. He not only
persistently used such premiums during such period of
grace, but frequently upon excuses to the plaintiff con-
tinued to use such money even after the thirty-day
period had expired. His use of such premiums was in
effect called to the plaintiff's attention at different times
by letters from policyholders saying in substance that
they had not received a receipt for the premiums paid
by them. When Eaton's attention was called by the
plaintiff to such complaints he would reply with some
feigned excuse for his failure to deliver such receipts.

The plaintiff inspected Eaton's office every six months
and the defendant claims that it knew or should have
known at each of such times that Eaton had misap-
propriated some of the premiums collected by him. In
November, 1911, an examiner for the plaintiff was at
Eaton's office. At that time he had misappropriated
premiums collected to the extent of about $4,000. After
the inspector arrived and while he remained at the office
Eaton from day to day deposited in an account kept by
the plaintiff in its name in said trust company of Portland
exceptionally large amounts to make good the premiums
that had been collected by him and not reported as paid.
By such deposits he reduced the amount of his mis-
appropriations about one-half. When the inspector
left the office the misappropriations by Eaton of premiums
collected by him and not settled and adjusted amounted
to about $2,000, knowledge of which the defendant claims
that the plaintiff had or should have had at that time.

On February 27, 1912, the plaintiff sent to Eaton its
check for $425 to the order of John H. Cuzner and
Eva May Cuzner in payment of the cash surrender value
of a policy on Cuzner's life, in which Eva May Cuzner
was named as beneficiary. It was sent to Eaton for

delivery to the Cuzners who resided at Belfast, Maine, about one hundred and twenty-five miles distant from Portland. Eaton forged the indorsement of the Cuzners thereon, and deposited it to his personal account and the same was without delay collected from the Union National Bank of Newark on which it was drawn. It was paid by the Union National Bank on March 1. That bank returned plaintiff's checks paid by it daily. This particular check was returned to the plaintiff on March 2, but the receipt by the Cuzners for the payment was not returned until many days thereafter.

On March 19, the day after the Phipps' check was drawn but before it was paid, the plaintiff received a letter from Mr. Cuzner dated March 18, in which he called the plaintiff's attention to the surrender of his policy early in February for the purpose of obtaining the cash value thereof, and said: " I have heard nothing from you since then   *   *   *.   Please let me hear from you at earliest convenience."

The jury could have found that a casual comparison of the indorsements on the Cuzner check in its possession with the genuine signature of the Cuzners also in plaintiff's possession, would have shown that the indorsements were not the genuine signatures of the Cuzners.

Nothing was done by the plaintiff relating thereto so far as appears until March 21, when the plaintiff wrote to Eaton saying that it had received a letter from Cuzner. In the letter it says that it forwarded a check to him, Eaton, on February 27 for the amount of the surrender value of the Cuzner policy and further says: " On referring to the check *which has been paid and returned to us* by the Union National Bank, Newark, N. J., we find that it *bears the endorsement of the payees and also your endorsement.* Kindly inform us if you cashed this check for Mr. Cuzner."

The plaintiff was by the letter of Mr. Cuzner received by it March 19 informed that he was at Belfast and had not received its check although plaintiff knew that the

check had in fact been promptly returned from Portland and paid upon the apparent indorsement of the payees followed by Eaton's personal indorsement. No notice was given to the defendant of the facts about the Cuzner check although the Phipps check was then outstanding and unpaid. Eaton replied that the check had been delivered to Spencer, a special agent, and returned by him because the insured wished two checks for different amounts. He then says: " I therefore deposited the check and forwarded my checks in place and it seems the delay was occasioned by Mr. Spencer being out of town." He adds that the matter is now satisfactorily adjusted. This was received by the plaintiff March 24. The check was then in the possession of the plaintiff and it had been considered by it as appears by plaintiff's letter to Eaton and it necessarily knew that the statements in the letter of Eaton were false. On March 24 Cuzner wrote the plaintiff acknowledging the receipt of a check from Eaton on March 23, nearly a month after plaintiff's check had been sent to Eaton for the Cuzners and it had been returned to the plaintiff apparently indorsed by the Cuzners. In such letter Cuzner said: " Enclosed find letter I received with check from Mr. Eaton, I received no check from you so could not have possibly endorsed it." The letter of Eaton to Cuzner inclosed stated that the check of $425 was handed to him therewith and adds: " Will arrange for Mr. Spencer to return the check which is in his possession." This statement in the letter by Eaton to Cuzner was not true and the plaintiff then had in its possession indisputable evidence of its being untrue because as stated the check with the forged indorsement was in its possession and had been for days. Notwithstanding this evidence in the possession of the plaintiff it, on March 25, sent to Eaton the check payable to Ella M. Wade. He immediately forged the name of the payee thereto and placed it in his customary way to his personal account and it came

back to the defendant bank for payment on March 28. The correspondence relating to the Cuzner check was called to the attention of the plaintiff's superintendent of Eastern agencies on March 27, and he stated that Eaton would be at the office the next day. On the morning of the 28th Eaton arrived at the plaintiff's office and confessed to said superintendent of agencies that he had forged the indorsements on the Cuzner check. He was referred to the president of the plaintiff where he made a similar confession but so far as appears he was not questioned in any way whatever in reference to other forgeries. So far as appears all other transactions were ignored. The conversation with said superintendent of agencies and with the president of the plaintiff occurred in the morning of March 28. The payment of the Wade check could have been stopped at the defendant bank at any time before three o'clock in the afternoon of that day. Nothing was done by the plaintiff. It does not appear that any examination whatever was made prior to March 28, 1912, with reference to the genuineness of the indorsement of the one hundred or more checks that had been forged by Eaton. Unless special request was made by the plaintiff to the defendant bank, the checks paid by it' were not returned to the plaintiff by that bank until the first of the following month. The checks paid by it in February were returned to the plaintiff March 1, and those paid in March were returned April 1. So far as appears no special requisition for the return of the checks that had been sent to the Portland office was asked by the plaintiff. On April 9, Eaton wrote the plaintiff confessing that he had forged the indorsements on the Phipps and on the Wade checks. In the meantime the plaintiff had its examiners at the office of Eaton in Portland and reports were made from time to time by them to it. Eaton had also been attempting to borrow of the plaintiff on the value of the anticipated renewal premiums on policies written pursuant to the

contract between Eaton and the plaintiff to pay his indebtedness. The plaintiff paid the claims of Phipps and of Wade by giving them and each of them a new check for the amount due them respectively. It is conceded that the plaintiff received some amount from Eaton to make good its losses by reason of his forgeries and misappropriations of its money, but the court refused to allow evidence of the amount of such receipts. On April 22 on the plaintiff's complaint or by its procurement Eaton was arrested. After such arrest the plaintiff for the first time notified the defendant bank that the indorsements on the checks now in suit had been forged and demanded the return of the money to it.

A depositor of a bank who receives from it a statement of his account with its paid checks as vouchers is bound to examine the account and vouchers and to report to the bank without unreasonable delay any errors which may be discovered. (*Morgan* v. *U. S. Mortgage & Trust Co.*, 208 N. Y. 218; *Leather Mfrs. Bank* v. *Morgan*, 117 U. S. 96; *Dana* v. *National Bank of the Republic*, 132 Mass. 156.)

The general rule stated in the *Morgan* case in this court has been commonly held not to extend to an examination of the indorsements of the payee of checks to ascertain the genuineness of such indorsements.

In *Critten* v. *Chemical National Bank* (171 N. Y. 219, 227) this court say: "When a depositor has in his possession a record of the checks he has given, with dates, payees and amounts, a comparison of the returned checks with that record will necessarily expose forgeries or alterations. It is true that it will give no information as to the genuine character of the endorsements, and because the depositor has no greater knowledge on that subject than the bank, it owes the bank no duty in regard thereto. (*Welsh* v. *German-American Bank*, 73 N. Y. 424; *Shipman* v. *Bank of the State of New York*, 126 N. Y. 318.) It is also true that verification of the returned checks would not prevent a loss by the bank in the case

of payment of a single forged check and probably not in many cases enable the bank to obtain a restitution of its lost money. It would, however, prevent the successful commission of continuous frauds by exposing the first forgeries. * * * Considering that the only certain test of the genuineness of the paid check may be the record made by the depositor of the checks he has issued, it is not too much, in justness and fairness to the bank, to require of him, when he has such a record, to exercise reasonable care to verify the vouchers by that record. * * * If the depositor has by his negligence in failing to detect forgeries in his checks and give notice thereof caused loss to his bank, either by enabling the forger to repeat his fraud or by depriving the bank of an opportunity to obtain restitution, he should be responsible for the damage caused by his default, but beyond this his liability should not extend."

The reason given for not extending the rule to include an examination of indorsements for the purpose of determining whether they are genuine is that the depositor has no greater knowledge on the subject of the genuineness of the signature of the payee than the bank. In the case now before us the plaintiff had in its possession the genuine signatures of each of the payees in the several checks whose names were forged by Eaton. Whether the plaintiff exercised reasonable care in examining the checks retained as vouchers by the defendant is a question of fact. (*Critten* v. *Chemical National Bank, supra; Leather Manufrs. Bank* v. *Morgan, supra; Shipman* v. *Bank of the State of New York, supra.*)

We think in this case that it was at least a question of fact upon the evidence before the court, a brief statement of which we have given, whether the plaintiff was negligent in failing to examine the indorsements on the checks which had been returned to it by the defendant and other banks with the genuine signatures of the payees in its possession prior to the payment of the

Phipps and Wade checks and whether such negligence and the consequent failure of the plaintiff to notify the defendant of the information that it would have obtained by such examination contributed to the payment of said checks by the defendant bank.

It is permitted to a bank to escape liability for repayment of amount paid out on forged checks by establishing that the depositor has been guilty of negligence which contributed to such payment and that it has been free from any negligence. (*Morgan* v. *U. S. Mtge. & Trust Co., supra.*)

We think it was also a question of fact whether the plaintiff after it knew or should have known that Eaton had forged the indorsement on the Cuzner check was negligent in failing to notify the defendant of such facts and the consequent danger of paying other checks sent by the plaintiff to its Portland office without special information and knowledge in regard to the genuineness of the payee's indorsements thereon.

We are also of the opinion that evidence to a reasonable extent should have been permitted to show that the amount recovered by the plaintiff from Eaton after the defendant bank had paid the Phipps and Wade checks included a repayment to it of the amounts in whole or in part charged to the plaintiff by reason of its payment of said checks and also whether the defendant bank was prejudiced by the plaintiff witholding its knowledge of Eaton's crimes until after his arrest on April 22.

Because of the failure of the court to submit the questions of fact arising upon the trial to the jury for its determination thereof and because of errors in the rulings of the court in excluding material evidence the judgments should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., COLLIN, HOGAN, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.