**INSURANCE CO. OF NORTH AMERICA v. FOURTH NAT. BANK OF ATLANTA.**

(District Court, N. D. Georgia, N. D. April 10, 1926.)

No. 621.

1. **Bills and notes** ⊙⇒434—As respects right to recover payment, drawee of draft is not bound to know genuineness of indorsements, but presentation of draft for payment is implied warranty that one presenting it is true holder.

The drawer of a draft, presented for payment by a bank, with the names of the payees indorsed thereon, is not bound to know the genuineness of the indorsements, nor to make inquiry before payment, but as between them presentation of the draft by the bank is an implied warranty that by genuine indorsements it is the true holder and entitled to collect it.

2. **Bills and notes** ⊙⇒434—Drawee of drafts held not negligent as to bank presenting them for payment and having no relation with drawer, for failing to discover that indorsements of payees' names on drafts were forged.

The manager of an insurance company from time to time made drafts on the company in favor of different payees. A bank with which the company had no relation presented the drafts for payment, with the names of the payees indorsed thereon, and they were duly paid. Later the company discovered that the indorsements were forgeries, and brought suit against the bank to recover the amounts paid. *Held*, that an answer setting up negligence of the company in failing to sooner discover the forgeries stated no defense.

3. **Bills and notes** ⊙⇒434—Issuance and presentation of number of drafts at different times held not to change the law applying to a single transaction, as respects right to recover payment.

The fact that there were a number of drafts, issued and presented at different times through a considerable period, does not change the law as it applies to a single transaction, and since the company was under no duty to the bank to discover the forgeries, its failure to do so before the later drafts were presented was not negligence as respects the bank.

At Law. Action by the Insurance Company of North America against the Fourth National Bank of Atlanta. On demurrer to defense made by answer. Demurrer sustained.

Smith, Hammond & Smith, Slaton & Hopkins, and J. M. B. Bloodworth, all of Atlanta, Ga., for plaintiff.

Brandon & Hynds and Little, Powell, Smith & Goldstein, all of Atlanta, Ga., for defendant.

SIBLEY, District Judge. This suit at law, filed February 20, 1923, sets up that the plaintiff insurance company, between February, 1918, and September, 1922, issued a number of drafts on itself for a large aggregate amount, payable to named persons, one of the payees in each draft being W. J. Nelson; that these were each presented by the defendant bank for payment, apparently indorsed by the proper payees, and payment made and the drafts taken up; but in September, 1922, it was discovered by the insurance company that each payee indorsement was a forgery, and promptly thereafter demand was made on the bank for repayment of the entire sum, as money had and received, in one count, and as damages for breach of an implied warranty of title and right to collect the drafts, in a second count.

The original answer makes denials and sets up a bar by election of an inconsistent remedy in a suit brought by the insurance company in another court. The allegations of this suit, which are made an exhibit, are not alleged by the bank to be true, so they do not, except as they may show the election claimed, enter into the facts pleaded as a defense in this case. Later, by two amendments of the answer, an additional defense is sought to be made that the loss to the insurance company was due to its own negligence in issuing and paying the drafts over so long

a period of time without discovery of the forgeries, and especially that each draft but one had been altered since its issuance by adding the name of W. J. Nelson as one of the payees, which alteration should have provoked inquiry. General and special demurrers to this plea of negligence are alone for decision now.

Several of the special demurrers complain of the vagueness of the allegations as to the means of knowledge which it is intended to charge that the insurance company had and neglected, and as to how it could and should have known it was paying on forged indorsements. No amplification in response to these demurrers has been attempted. The general averments of possession of books and records disclosing the forgeries, and of opportunity to discover them, must be disregarded as mere conclusions. There are but two definite facts stated, which are sufficiently pleaded, to wit, that though each draft purported to be, and was intended to be, a payment of a fire loss to a policy holder, there were no such losses, and no such policies in fact, as would appear from the insurance company's records, and that W. J. Nelson's name was added after issuance in each draft except one. The questions are: Should the insurance company have noted these facts and been led by them to suspect and detect the frauds? And, if so, is the failure to do so a defense to the bank?

The rights and liabilities of persons dealing with forged commercial instruments have been the subject of almost endless judicial decision. A recent and compendious collection is found in Brady's "Forged and Altered Checks," in which more than 500 cases are treated. It is initially important, as pointed out by Mr. Justice Gray, in Leather Manufacturers' Bank v. Merchants' Bank, 128 U. S. 26, 34, 9 S. Ct. 3, 32 L. Ed. 342, to bear in mind that the parties here do not sustain the relation of banker and depositor. There, in consideration of the loan of the depositor's money, the banker agrees to repay it to the depositor or his order, usually on check; the banker assuming to ascertain whether the check is that of his depositor, and whether the person presenting it for payment is the true payee designated in it, or his true indorsee. If a banker pays money on a check having a forged signature, or to a false payee or holder, he has simply not discharged his obligation to his depositor, and has not paid his debt. It is not a question there of the banker's good faith or his negligence.

But it is also abundantly established that,

when the banker renders his account to the depositor, with the paid checks as vouchers, the depositor owes a duty of diligence to examine it within a reasonable time, and to recognize and report either errors in the account, or forgeries of the signature, or alteration of the amount of the checks, because the depositor should know whether he signed each check and for what amount. A failure so to do will relieve the banker of the consequences of his error, because of the presumed damage done him by delay. But the depositor's duty of diligence does not extend to examining for or detecting forgeries in the indorsements. The depositor has no peculiar information about these. Responsibility for them was originally, and continues to be, on the banker and those with whom he deals. If the depositor has any duty, it is to complain promptly after discovery of a forged indorsement, on pain of defeat for delay thereafter actually causing loss to his banker.

[1, 2] But the wealth of authority (some conflicting) on these points is not directly applicable here. This bank and insurance company had no relationship. They dealt at arm's length, in separate transactions, each of which, though similar to others, stands on its own merits. In each the bank, claiming to be the holder, by due indorsement, of a draft on the insurance company, drawn by the insurance company's manager, requested payment of it. Such a request implies a warranty by the bank that it, by genuine indorsements, is the true holder and entitled to collect the draft, just as one offering to sell a chattel is held to impliedly warrant that he has a valid title and a right to sell. White v. Continental National Bank, 64 N. Y. 316, 21 Am. Rep. 612; Leather Manufacturers' Bank v. Merchants' Bank, 128 U. S. 26, 35, 9 S. Ct. 302, 32 L. Ed. 342; United States v. National Exchange Bank, 214 U. S. 302, 320, 29 S. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184. A payment made is on the faith of the correctness of the implied representation.

The insurance company, before paying here, was bound to recognize the signature of its manager, and to verify the amount for which it had issued its draft, and the failure to recognize alterations in its own paper may be held to be an adoption of it in its altered form. United States Bank v. Bank of Georgia, 10 Wheat. 332, 345, 6 L. Ed. 334; Cooke v. United States, 91 U. S. 389, 396, 23 L. Ed. 237. But it was not bound to question or verify the indorsements constituting the bank's title and authority to collect. For the

indorsements, the holder of a draft is responsible to the drawee, and the drawee is not assumed to have, and generally has not, superior or even equal means of knowledge. There being no duty of inquiry put on the drawee by law or custom, failure to note a forgery in the indorsements cannot be negligence in him. As in the case of the depositor's checks, duty arises only on actual discovery of the forged indorsement, and that duty is to complain with promptness, lest damage in fact result from his delay. This is believed to be the purport of the weight of authority which is in point.

It has been held that, if the drawer himself delivers the draft to an impostor, who pretends to be the named payee, and who accordingly indorses and collects (Land Title & Trust Co. v. Northwestern National Bank, 211 Pa. 211, 60 A. 723, 107 Am. St. Rep. 565), or where the drawer by mistake mails the draft to the wrong address, where it falls into the hands of another person having the payee's name, who indorses and collects (Weisberger Co. v. Barberton Savings Bank, 84 Ohio St. 21, 95 N. E. 379, 34 L. R. A. [N. S.] 1100; Slattery v. National City Bank, 114 Misc. Rep. 48, 186, N. Y. S. 679, and cases cited), then it is the drawer's loss. In such cases it was the drawer's own act that invited and caused the forgery. In the first case the identical person got the money who was intended by the drawer when he gave him the draft, and in the second class of cases no diligence by the bank could have determined that the payee intended was not the person of that name to whom the drawer had in fact, though unintentionally, delivered the draft.

But it is not pleaded here that the officer making these drafts delivered them to impostors, or intended them for other persons of the same names. The mistake which it is said the insurance company made in issuing them was that the payees had no insurance policies, and had in fact suffered no fire loss. That the insurance company did not owe the payees anything is not itself material. If it wished to make loans or gifts by draft, it would not concern the bank. It becomes of importance only in connection with the assumed fact that it thought it was paying debts. It is not alleged that the payees were fictitious persons. Had they really indorsed the drafts and the insurance company honored them, there could not be any recourse on the bank, no matter how fraudulent the loss claims, unless the bank was implicated in the fraud. A discovery by the insurance company of the fraud would probably have led to discovery of the forgery of the indorse-ments, but it owed no duty to the bank to discover either. Its only duty was to complain after actual discovery of the forgery.

The addition of Nelson's name as payee the insurance company was doubtless bound to notice, and on the authority of United States v. Bank of Georgia, 10 Wheat. 332, 6 L. Ed. 334, its payment of the drafts to an innocent holder was an adoption of them as so altered. But it is not perceived how that helps the case of the bank. The effect of adding another payee was to bind another besides the first payee by the receipt of the money, which ordinarily would not prejudice the insurance company, or awaken any discontent or inquiry on its part. If Nelson's indorsement had been the only one forged, the bank might better contend that the alteration was material to it. It is not alleged that the company in fact noticed the change in payees, or was led actually to know or suspect forgery in the indorsements, which alone would charge it with any duty either to refuse to pay or to promptly repudiate.

I do not perceive that the equitable doctrine ought to apply that, if one of two equally innocent parties must suffer by the act of a third, the loss should be borne by the party through whose fault the injury became possible. The fraud of a trusted agent does not always fix the loss on his innocent principal, as against the third person injured, though the principal was careless. It does so only when the principal has failed in his duty. In this case the duty to see that these indorsements were genuine was on the bank, and those under whom it took, and not on the insurance company. The insurance company is not complaining of the acts of its fraudulent agent. It is complaining of the dereliction of the bank, a dereliction which seems to me to be clearly established by law. If my agent steal goods from me and sell them to another, who in turn sells them, unrecognized, to me, and gets my money for them, could I not recover my money on discovery that the goods were mine, and not his who sold them to me? Could he reply that I should have recognized my goods, and not bought them, or should have kept them more safely, and not let my agent steal them? Could he say that we have had many such transactions, and because they are many I should not complain? The bare fact that he had gotten my money for them on his implied representation and warranty that the goods were his and he had a right to sell them would answer the question.

[3] The bottom principle is the same in selling or collecting commercial paper, except

for the ingrafted exception, arising from the nature of the subject-matter, that one must recognize his own or his drawer's signature and alterations in his own paper, and must promptly report such mistakes as he was not bound to recognize on presentation, but subsequently discovered. This being the law of a single transaction, nothing is presented to alter it when transactions are multiplied. Multiplication was not deemed material in United States v. National Exchange Bank of Providence, 214 U. S. 302, 29 S. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184.' Prudential Insurance Co. v. National Bank of Commerce, 227 N. Y. 510, 125 N. E. 824, 15 A. L. R. 146, seems opposed to some of what is held here, but has distinguishing circumstances, especially in that the untrustworthiness of the dishonest agent was known to the drawer.

The general demurrer to the plea of negligence is sustained.