HARRY SEGAL et al., Copartners Doing Business as THE DOMINION Co., Plaintiffs, v. NATIONAL CITY BANK OF NEW YORK et al., Defendants, and BROOKLYN TRUST COMPANY et al., Impleaded Defendants.

Supreme Court, Special Term, Queens County, December 28, 1944.

*Sydney D. Robins* for plaintiffs.

*Michael J. De Santis* and *Stewart Maurice* for National City Bank of New York, defendant.

*Dimitri G. S. Eristoff* for Brooklyn Trust Company, impleaded defendant.

*Stewart Maurice* for Modern Industrial Bank, impleaded defendant.

STEINBRINK, J. This is a motion by the plaintiffs for summary judgment against the defendant National City Bank.

The action is to recover the sum of $10,000 paid by the National City Bank upon a check containing what is alleged to be the forged indorsement of the payee therein named. Plaintiffs are two of three copartners, doing business under the name of The Dominion Co. The third partner, Ruth Tratner, refused to join in the action and has been named a party defendant. The National City Bank impleaded the Brooklyn Trust Company and the Modern Industrial Bank as parties defendant. Thereafter the Modern Industrial Bank secured the joinder as an impleaded defendant of Louis Davidson, doing business as Globe Equipment Co. and as Globe Construction Co.

The check in suit was drawn against the account of The Dominion Co. with the National City Bank and was made payable to Globe Equipment Co. At plaintiffs' request the check was certified by the said bank. The complaint alleges that upon certification the check was delivered to one Louis Davidson for delivery by him to the Globe Equipment Co. of Boston, Massachusetts; that the check was never delivered to nor indorsed by the payee to whom the check was intended to be paid; and

that the indorsement on the check of the name Globe Equipment Co. is a forgery.

The answer of the National City Bank contains denials and three affirmative defenses, which may be briefly summarized. The first defense alleges that Louis Davidson is the husband of the defendant Ruth Tratner and was a silent partner with the plaintiffs in The Dominion Co., and as such, was co-owner of the partnership assets; that the check in suit was drawn against the partnership assets; that Louis Davidson, who did business under the name of Globe Equipment Co. and Globe Construction Co., opened an account with the Modern Industrial Bank, indorsed the check in suit in the names of Globe Equipment Co. and Globe Construction Co. and deposited it with the Modern Industrial Bank for collection; that the said bank presented the check for payment, and the National City Bank, as drawee, paid the same; that payment of the check was made according to its tenor and plaintiffs are estopped from asserting that it was not so paid.

The second defense alleges an account stated, which plaintiffs are estopped from questioning by reason of monthly statements of The Dominion Co.'s account with the National City Bank, rendered during the months of September, 1943, to February, 1944, inclusive, which statements reflected payment of the check in suit.

The third defense alleges that at the time the check was delivered to Davidson, The Dominion Co. was not indebted to the Globe Equipment Co. of Massachusetts; that the check was not intended for the use of the said company and was therefore payable to a fictitious payee and therefore payable to bearer.

The facts detailed in the moving affidavits may be summarized as follows: In April, 1943, the plaintiffs herein and the defendant Ruth Tratner entered into a partnership agreement, pursuant to the terms of which the plaintiffs agreed to lend $55,000 to the partnership to be used in purchasing certain equipment for lease to the United States Government. Upon execution of the said agreement the parties thereto caused to be filed a certificate of doing business and caused an account to be opened with the National City Bank. Louis Davidson, the husband of Ruth Tratner, was retained by the partnership as its agent for the purpose of acquiring the necessary equipment. Davidson represented to the plaintiffs that he could obtain certain Oshkosh earth movers from the Globe Equipment Co., a Massachusetts corporation, at a price of $53,000. He represented further that he had paid a deposit of $6,000 on

account of the said purchase price and that the Globe Equipment Co. of Massachusetts desired two certified checks, one in the sum of $37,000, and one in the sum of $10,000, in payment of the balance of the purchase price. Accordingly and on April 23, 1943, two checks were executed by The Dominion Co., as requested, each payable to the Globe Equipment Co. The checks were certified and were thereafter deliverd to Davidson with the instruction that they be turned over to Gael Coakley, president of the Globe Equipment Co. of Massachusetts, in payment of the balance of the purchase price represented by Davidson to be due. Davidson acquired possession of the earth movers and caused them to be delivered to The Dominion Co. It appears that the Globe Equipment Co. of Massachusetts never did receive or indorse the $10,000 check. Its name was indorsed thereon by Davidson under the following circumstances:

On or about July 1, 1943, Davidson indorsed the name Globe Construction Co. on the check and attempted to open an account in that name with the Modern Industrial Bank. Thereafter he added the name Globe Equipment Co. to the indorsement and he opened an account with the Modern Industrial Bank under the name of Louis Davidson, doing business as Globe Equipment Co. The check with its forged indorsement was deposited in the said account. *Thereafter* Davidson caused to be filed a certificate of doing business under the name of Globe Equipment Co. and a certified copy of the certificate was furnished to the Modern Industrial Bank. The check was later presented to the National City Bank for payment and was paid.

The $37,000 check was received by the Globe Equipment Co. of Massachusetts, and after being properly indorsed, was paid by the National City Bank. In the month of May, 1943, plaintiffs received a statement from the National City Bank indicating that their account had been charged the amount of the two checks, and they say that they assumed therefrom that both checks had been turned over to the Globe Equipment Co. of Massachusetts.

The affidavits relied upon by the opposing party recite with more particularity the facts alleged in the affirmative defenses. The affidavit of the manager of the branch of the National City Bank, at which the plaintiffs' account was maintained, sets forth that the account was opened on April 16, 1943; that the two checks referred to were certified on April 23, 1943; that the $37,000 check was returned to the plaintiffs on or about May 1, 1943, together with the April, 1943, statement; that the $10,000 check was not returned to the plaintiffs until on or about August

1, 1943; that the statement rendered on August 1, 1943, showed payment of the $10,000 check; and that each of the statements thereafter rendered showed payment of this item. Attention is directed to the difference in the form of the indorsements appearing on the two checks and the three months' delay in clearance of the $10,000 check, in spite of which no claim of forgery was asserted until February, 1944.

The affidavit of the treasurer of the Modern Industrial Bank recites that Davidson opened an account with the said bank on July 1, 1943, under the name of Globe Equipment Co. and deposited the check in suit, which was indorsed by Davidson " Globe Equipment Co." and " Globe Construction Co." Davidson was informed that he could not draw against the check unless he furnished the bank with a certified copy of a trade name certificate. *On July 10, 1943,* Davidson furnished the bank with a certified copy of a trade name certificate indicating that he was doing business under the name of Globe Equipment Co. From time to time the bank honored withdrawals against the account and by October 23, 1943, the entire sum of $10,000 had been withdrawn.

The attorney for the Modern Industrial Bank states in his affidavit that an investigation discloses that Davidson had frequently in the past used the name of " Globe " and " Dominion " in the conduct of business enterprises and that it was his custom to use his wife, Ruth Tratner, as a dummy in some of his enterprises.

The affidavit of Gael Coakley, president of the Globe Equipment Co. of Massachusetts, sets forth that his company owned eight Oshkosh earth movers which it desired to sell; that Davidson offered to purchase them and that after some negotiations the price was fixed at $37,000. Coakley went to New York and at Davidson's request made out the bill of sale to the Unity Construction & Equipment Co. The $37,000 check was received and the bill of sale in the requested form was issued. Coakley had no dealings with the plaintiffs until some time in January, 1944, when they called him on the telephone and asked if he would be interested in repurchasing the eight earth movers. During the course of this conversation the plaintiffs mentioned $47,000 as the price paid for the equipment and Coakley then pointed out that the price was $37,000. Several months later Coakley acted as broker in the resale of the equipment and at the same time executed a corrected bill of sale to The Dominion Co., receiving in exchange from the Unity Construction & Equipment Co. an instrument releasing any claim arising out of the

issuance of the original bill of sale. The release from the Unity Construction & Equipment Co. was forwarded to Coakley by the attorney for The Dominion Co.

Execution of the foregoing release is the subject of a reply affidavit by one Samuel Haskes. It appears that he and four others, including Ruth Tratner, formed a copartnership under the name of Unity Construction & Equipment Co. Davidson was never a member of the copartnership. The partnership never did purchase any equipment from the Globe Equipment Co. of Massachusetts, nor did it authorize Davidson to purchase any equipment on its behalf. It was in view thereof and with the knowledge and consent of all of the copartners that the release was executed. " In determining whether there is a forgery the true test is whether or not the endorsement of the name of the payee was made by the person who was intended by the drawer to be the payee." (*Halsey* v. *Bank of New York & Trust Co.*, 270 N. Y. 134, 138–139.) One may commit a forgery by the use of his own name if that name is used with intent to deceive. (*International Union Bank* v. *Nat. Surety Co.*, 245 N. Y. 368, 373.) Plaintiffs' assertion that the Globe Equipment Co. of Massachusetts was intended to be the payee is not contradicted by any of the facts appearing in the opposing papers. Coakley's affidavit is entirely consistent with plaintiffs' claim that they were led to believe by Davidson that two separate checks, one for $37,000 and the other for $10,000, were requested by the Globe Equipment Co. of Massachusetts in payment of what was represented as the balance of the purchase price. The other affidavits merely show the means by which Davidson accomplished his fraudulent design to convert to his own use the proceeds of the $10,000 check. While Davidson might have had a right to conduct business in New York under the name of Globe Equipment Co., he was not thereby given the right to use that name in the indorsement of a check, payment of which was intended for another company bearing the same name.

It is clear that the two checks were made payable to the order of the named payee identified as the Globe Equipment Co. of Massachusetts and not to a fictitious person, as is suggested, and that the indorsement on the $10,000 check was forged. The drawee bank may not justify payment of the $10,000 check on the ground that it was obtained from the plaintiffs by fraud and was presented for payment by the fraudulent holder (*American Surety Co.* v. *Empire Trust Co.*, 262 N. Y. 181; *Ullman Co.* v. *Central Union Trust Co.*, 257 N. Y. 563), nor

may such payment be justified on the claim asserted in the first affirmative defense that Davidson was a secret member of the partnership which drew the check. It is argued that if Davidson were a partner, he could not be criminally charged with selling partnership property (*People* v. *Dye,* 134 Misc. 689), and hence could not be charged with forgery of a partnership check drawn against partnership funds. The essence of the crime of forgery is the intent to defraud and the crime is complete, even though the perpetrator did not intend to gain any personal advantage from the forgery. (*People* v. *Esrig,* 240 App. Div. 300.) The partnership agreement in this case provides that partnership funds on deposit in the bank may be withdrawn only upon the signature of the plaintiffs. The third partner, Ruth Tratner, is given no authority to withdraw such funds, and if in fact Davidson was a secret partner and his wife a mere dummy for him, he (Davidson) would also be without authority to withdraw partnership funds. When Davidson forged the indorsement on the partnership check his intention was to defraud the individual partners, the nature of whose rights in and to the partnership property is of no materiality in determining whether a forgery has been committed. (*People* v. *Esrig, supra.*)

The bank was under a contractual duty to pay the amount of the check to the person for whom payment was intended by the drawer and it was bound at its peril to determine the identity of such payee. (*American Surety Co.* v. *Empire Trust Co.,* 262 N. Y. 181, *supra; Strang* v. *Westchester Co. Nat. Bank,* 235 N. Y. 68; *Seaboard Nat. Bank* v. *Bank of America,* 193 N. Y. 26; *Shipman et al.* v. *Bank S. N. Y.,* 126 N. Y. 318.) The bank may be relieved of liability for breach of this contractual duty by establishing that the drawer has been guilty of negligence which contributed to the unauthorized payment and it has been free from any negligence. (*Morgan* v. *U. S. Mortgage & Trust Co.,* 208 N. Y. 218; *Prudential Ins. Co.* v. *Nat. Bank of Commerce,* 227 N. Y. 510.) While the second affirmative defense herein is pleaded in the form of an account stated, it is sought to be sustained upon the theory that the facts therein alleged are sufficient to charge plaintiffs with having negligently omitted to report the forgery to the bank within a reasonable time. The claim of negligence is predicated upon the monthly statements issued to The Dominion Co. from May 1, 1943, to February 1, 1944, inclusive. The bank's statement issued on May 1, 1943, showed that the two checks had been charged against the partnership account and return of the $37,000 check showed

that it had been paid. The check so returned bore the following rubber stamp indorsement: " FOR DEPOSIT ONLY IN THE FIRST NATIONAL BANK OF BOSTON TO THE ACCOUNT OF GLOBE EQUIPMENT Co." The $10,000 check was not returned until August 1, 1943, and it bore the following indorsement in writing:

" Globe Equipment Co."

" Globe Construction Co."

The bank calls attention to the fact that despite the lapse of three months between the return of the two checks, plaintiffs made no inquiry concerning the cause of the delay in payment of the $10,000 check and that although the two checks bore wholly dissimilar indorsements, no claim of forgery was made until some time in February, 1944. With respect to this aspect of the case, plaintiffs say that when the May 1, 1943, statement was received showing a charge against the partnership funds in the amount of the two checks, they believed that Davidson had turned over both checks to the Globe Equipment Co. as directed. They say that the forgery was not discovered until February, 1944, which was immediately after the negotiations with Coakley for the resale of earth movers.

The rule which requires a depositor to examine his bank statements, together with the returned paid checks accompanying them and to report to the bank without unreasonable delay any errors which may be discovered (*Morgan* v. *U. S. Mortgage & Trust Co.*, *supra*), is generally not extended to an examination of the indorsement of the payee appearing on the check to ascertain its genuineness. (*Prudential Ins. Co.* v. *Nat. Bank of Commerce*, *supra*.) The rule is so limited because the depositor has no greater knowledge than the bank as to the genuineness of the payee's indorsement. Of course, where the depositor has direct notice that a person to whom a check was entrusted has forged the payee's name and that other checks entrusted to the same person are still outstanding, he is under a duty to disclose the fact so that the bank may be free to adopt protective measures. (*Prudential Ins. Co.* v. *Nat. Bank of Commerce*, *supra*.) The plaintiffs in this case were under no duty to compare the indorsements appearing on the two checks. (*Fitzgibbons Boiler Co.* v. *National City Bank*, 287 N. Y. 326.) At the time payment was made on the forged indorsement there were no other checks outstanding and there was consequently no danger of any further forgeries by Davidson. Plaintiffs' failure to report the forgery until February, 1944, in no way contributed to the unauthorized payment of the check. There is no evidence to suggest that plaintiffs had any notice prior

to payment of the check that its indorsement might be forged by Davidson. In these circumstances plaintiffs cannot be denied recovery on the claim that their negligence was the proximate cause of the breach by the bank of its contractual duty.

Nor may plaintiffs be denied recovery on the claim that there has been an account stated by reason of their receipt of the monthly bank statements. As was said in *Fitzgibbons Boiler Co.* v. *National City Bank* (*supra,* p. 334): " A depositor is not concluded by the bank's statement where he is ignorant of the facts and cannot reasonably be expected to know them. The statements of account charged the depositor with the knowledge which an examination of the statements themselves would disclose. The basis of this rule is the duty of the depositor to make such an examination. There is no duty upon a depositor to ascertain whether the endorsements are genuine or forged. In *Shipman* v. *Bank of State of New York* (126 N. Y. 318, at p. 328) we said: ' The drawer is not presumed to know, and in fact seldom does know, the signature of the payee. The bank must, at its own peril, determine that question. It has the opportunity, by requiring identification when the check is presented, or a responsible guarantee from the party presenting it, of ascertaining whether the indorsement is genuine or not. When it returns the check to the depositor, as evidence of a payment made by his direction, the latter has the right to assume that the bank has ascertained the fact to be that the indorsement is genuine.' (*National Surety Co.* v. *Manhattan Co.,* 252 N. Y. 247; *Potts & Co.* v. *Lafayette Nat. Bank,* 269 N. Y. 181, 189.) "

The bank's final contention is that The Dominion Co. suffered no loss by reason of the payment on the forged indorsement, since it got what it bargained for, namely, the eight Oshkosh earth movers. The fallacy in this contention is that The Dominion Co. bargained for the equipment at the price offered by its owner, the Globe Equipment Co. of Massachusetts, and not at the price fraudulently represented to it by Davidson in furtherance of his plan to convert the proceeds of the $10,000 check to his own use. When the fraudulent plan was accomplished The Dominion Co. was damaged to the extent of $10,000. Its subsequent retention of the equipment with knowledge of the facts cannot be taken as a condonation of Davidson's fraud in which the seller was not a participant.

Accordingly, plaintiffs' motion for summary judgment will be granted.