(No. 21724.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* KARL J. HEINZELMAN, Plaintiff in Error.

*Opinion filed February 23, 1933.*

MILFORD H. OLDS, and EDWARD N. SHERBURNE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, WILKIE HAM, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

The grand jury of Cook county returned to the July, 1931, term of the criminal court of Cook county an indictment, consisting of four counts, against Roscoe H. H. Luckenbill, Lee A. King, Karl J. Heinzelman and Earle D. Philips. The first count of the indictment charged the defendants with larceny as bailees on August 24, 1928, of the sum of $7000. in money, describing various kinds thereof,

the property of the Exchange State Bank of Chicago. The second count charged Luckenbill as president and agent, King as vice-president and agent, and Heinzelman as director and agent, each in the employ of the Exchange State Bank of Chicago, with having embezzled on August 24, 1928, and fraudulently converted to their own use without having the consent of said bank, $7000 in money, describing various kinds thereof, the property of the bank, which was delivered to and came to the possession of and was under the care of Luckenbill, King and Heinzelman by virtue of such respective employments, and which count charged Philips with being present and knowingly aiding, abetting and assisting. The third count charged Luckenbill as president and agent, King as vice-president and agent, and Heinzelman as director and agent, each in the employ of the Exchange State Bank of Chicago, without having the consent of said bank, with embezzlement on August 24, 1928, and fraudulently converting to their own use $7000 in money, describing various kinds thereof, the property of the bank, which was delivered to and came to the possession and was under the care of Luckenbill, King and Heinzelman by virtue of such respective employments, and which charged Philips, not being present, with advising, encouraging, aiding and abetting. The fourth count charged all four defendants with larceny on August 24, 1928, of $7000 in money, describing various kinds thereof, the property of the Exchange State Bank of Chicago, a corporation and incorporated bank.

Luckenbill was not apprehended. Philips asked for and obtained a severance. King and Heinzelman entered pleas of not guilty, respectively. The case was tried by the court without a jury as to King and Heinzelman, and the court found them guilty of embezzling the sum of $3895 and sentenced them to imprisonment in the penitentiary from one to ten years. Thereafter King died, and his death was suggested of record. It is to review as to Heinzelman the

finding and judgment of the court that this writ of error is prosecuted.

From the evidence it appears that the Exchange State Bank of Chicago (hereinafter called the bank) was on August 24, 1928, and for some time thereafter, a banking corporation organized under the laws of the State of Illinois but was not a member of the Clearing House Association; that checks drawn on the bank were cleared through the Chicago Trust Company, (hereinafter called the trust company,) a member bank in the Clearing House Association—*i. e.*, all checks drawn on the bank were concentrated in the clearing house, sent over to the trust company and paid to the clearing house by the trust company, which in turn charged these checks to the account of the bank, and for the purpose of meeting these checks, and for the additional service hereinafter referred to, the bank maintained a deposit with the trust company. In addition to clearing the checks of the bank the trust company rendered a further service to the bank in clearing its notes—*i. e.*, after receiving the "approbation" of the bank the trust company would discount the notes of customers of the bank, pay the money to such customers, and in turn charge the bank's account with the full amount of the note. All the officers in the commercial department of the trust company were authorized to "clear" notes for the bank.

Luckenbill was president and a director of the bank, King was vice-president and a director, and Heinzelman was a director. King was also an assistant cashier in the commercial department of the trust company. Philips, who admitted that he had been indicted in other cases, in one of which he had entered a plea of guilty, about five months before he testified, was awaiting sentence on that plea at the time he testified. He was called as a witness by the State, and from his testimony it appears that in August, 1928, he was employed as cashier by Howe, Snow & Co., a brokerage house with offices in Chicago and elsewhere;

that his salary was $350 per month; that Heinzelman was resident manager in charge of the Chicago office of that concern; that one afternoon (he thought it was around August, 1928, but was not certain as to the time,) he was called into Heinzelman's office, where Heinzelman and Luckenbill were present; that King was not present; that Heinzelman had a note in his hand and said to witness, "Philips, here is a note for $7000; will you sign it? Here is another note for the same amount, made payable to you;" that the substance was that he was asked to sign a note for $7000 as an accommodation and was given another note for that amount; that the two notes were on the table together; that he signed the note intended for his signature and took the other note, which he states was signed, "Exchange State Bank, by R. H. H. Luckenbill," and personally placed it in the files of Howe, Snow & Co.; that he next saw this last mentioned note in the early part of 1929, when he was requested to sign a renewal of his note which the bank had; that he executed one renewal note for $7000 payable to the bank dated February 20, 1929, which last mentioned note was introduced in evidence; that he signed only two notes for $7000; that he never received any of the proceeds of the first note signed by him; that he had never seen and knew nothing about a cashier's check on the trust company dated August 24, 1928, for $3895, payable to the order of Carl D. Phillips; that the endorsement on the back thereof was not his signature nor in his handwriting. The alleged note for $7000 of the bank payable to himself was not produced by him although he claimed to have made a search for the same, nor did he produce the original note for $7000 signed by him for which a renewal note was given.

The State called as a witness Maurice Milenbach, chief clerk of the trust company in August, 1928, and over the objection of Heinzelman he was permitted to identify a cashier's check of the trust company for $3895 dated Au-

gust 24, 1928, payable to Carl D. Phillips and endorsed on the back "Carl D. Phillips;" a requisition dated August 24, 1928, for a draft on the trust company for $3895, payable to the order of Carl D. Phillips; a deposit slip showing a deposit on August 24, 1928, to the credit of Lee A. King in the trust company of $3895; a charge slip of the trust company charging the account of the bank on August 24, 1928, with $6895; the account of the trust company with King which shows a deposit on August 24 of $3895, a withdrawal on August 24 of $1947.50 and on August 28 one of $2209.90, and the ledger sheets of the trust company with the bank which show credits on August 24 of $3000 and on August 28 of $2209.90, and a debit on August 24 of $6895.

The Exchange State Bank treated the entire matter as a loan by it. The Chicago Trust Company acted as agent for the bank. Luckenbill, in his conversation with King with respect to the note for $7000 of August, 1928, stated to King that the bank had arranged to make a loan to Carl D. Phillips. Carl D. Phillips was not present when the note of August, 1928, was presented to the trust company. Luckenbill asked that King clear the loan in the trust company. The note remained with the teller of the trust company, who put through the credit entry to the bank, and the usual procedure was to deliver all of those to the messenger of the bank every day. King knew the loan was an unsecured loan. Luckenbill told King that Phillips' business was as cashier of Howe, Snow & Co. King knew that Heinzelman was the resident manager of that concern and was personally acquainted with him. Luckenbill appropriated the money to his own use and to the use of King. Heinzelman received none of the proceeds arising from the transaction. One of the disputed questions in the case was whether the signature "Carl D. Phillips" on the back of the check for $3895 was written by King. He testified that it was not and was corroborated by a handwriting expert,

while another handwriting expert testified that the signature was written by the same person who wrote two State exhibits which were admitted to be in the handwriting of King. In his own behalf King testified that he had been in the banking business for twenty-five years; that he was vice-president and director of the bank and an assistant cashier of the trust company; that on August 24, 1928, Luckenbill, president of the bank, brought to him at the trust company a note signed "Carl D. Phillips," stating that the bank had agreed to loan Phillips that amount and that the loan had been approved by him and another director, and requested him (King) to clear the note through the trust company; that he, as assistant cashier in the commercial department of the trust company, as well as the other officers in the commercial department of that company, had authority to do that upon the request of the bank, and he did so. At Luckenbill's direction he (King) caused a cashier's check to be drawn in favor of Carl D. Phillips for $3895, which he, (King,) as such assistant cashier of the trust company, signed and delivered to Luckenbill. The sum of $105 was charged as interest. The check for $3895 was charged to the account of the bank, and $3000, representing the balance of the note, was credited to the account of the bank with the trust company.

Plaintiff in error testified in his own behalf and denied that he ever called Earle D. Philips to his office and requested and directed him to sign a note for Luckenbill, and denied that the conversation detailed by Philips with reference to the note ever took place.

At the close of all the evidence motions were made by King and Heinzelman for a finding of not guilty, which were overruled by the court. The court found King and Heinzelman guilty of embezzlement in the sum of $3895, stating: "I find among these facts that these men have had a high reputation for honesty and fair dealing and apparently have never been involved in any improper finan-

cial transactions, and from the evidence I find it to be a fact that Mr. Heinzelman did not profit in any way from this transaction." The trial court, after imposing sentence upon Heinzelman, fixed his bail at the sum of $500.

The errors relied on are that the finding of the court and the judgment thereon are contrary to the evidence and the law and that a variance exists between the indictment and the proof. A distinguishing and essential element in embezzlement is that the property is lawfully in the possession of the accused by some fiduciary relation between the accused and the owner. (*People* v. *Mooney,* 303 Ill. 469; *People* v. *Ehle,* 273 id. 424.) Money obtained by forgery or by false pretenses is not lawfully in the possession of the parties so obtaining the same. No title to a negotiable instrument passes against a party whose name is forged as an endorser thereon. (*Cosmopolitan Bank* v. *Lake Shore Bank,* 343 Ill. 347.) The ownership of property alleged to have been embezzled is an essential averment in the indictment and must be proved as alleged. Whether or not the defendants acquired property from the Chicago Trust Company by forgery, false pretenses or the confidence game is not here in question. While there is evidence in the record tending to show that some of the defendants were guilty of obtaining money from the trust company by forgery, false pretenses or the confidence game, there is no evidence in the record that plaintiff in error, Heinzelman, obtained or embezzled any money which was lawfully in his possession from the Exchange Bank of Chicago, or that he had any knowledge that either of the other defendants obtained or embezzled any money which was lawfully in his possession from the bank, or that he was an accessory before the act as to any such embezzlement.

The judgment of the criminal court of Cook county against plaintiff in error must therefore be reversed and the cause remanded to that court.

*Reversed and remanded.*