Commercial Casualty Insurance Company, Appellant, v. W. H. Pearce, Sr. and W. H. Pearce, Jr., Trading as W. H. Pearce and Company, Appellees.

Gen. No. 9,889.

Opinion filed August 19, 1943.

HOLLANDER & HOLLANDER and B. M. STEINER, all of Chicago, for appellant.

WILLIAM T. CHISM and HAROLD V. SNYDER, both of Chicago, for appellees; HAROLD V. SNYDER, of Chicago, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

Prior to 1920, W. H. Pearce, Sr., and W. H. Pearce, Jr., his son, were engaged in the construction business as copartners. In October of that year they conveyed, as such copartners, the entire assets and business of the copartnership to three trustees designated as "W. H. Pearce & Co.," pursuant to a written common-law trust agreement between the copartners, as such, and the trustees therein named, two of whom were the said W. H. Pearce, Sr., and W. H. Pearce, Jr., the third trustee being H. E. Werth. Of a total authorized issue of 1000 negotiable, $100 par value, "Common Beneficial Interests" or shares, 350 were issued to the copartnership, as such, in exchange for the total copartnership assets, and the trustees assumed all the copartnership liabilities. These 350 shares, being the only assets of the copartnership, were returned to the trust, and reissued to W. H. Pearce, Sr., and W. H. Pearce, Jr., in separate amounts. H. E. Werth had no share or beneficial interest in the trust. In 1924, W. H. Pearce, Sr., being in ill health and advanced in age, resigned as a trustee, and thereafter did not engage in the business. His resignation was formally accepted on January 22, 1926, and F. D. Pearce, his daughter and a sister of W. H. Pearce, Jr., was elected as a trustee in his stead. The abstract does not show that she ever owned any share or certificate of beneficial interest. Upon the resignation of W. H. Pearce, Sr., as a trustee, the son, W. H. Pearce, Jr., became president and the trustees thereafter were W. H. Pearce, Jr., F. D. Pearce, and H. E. Werth. In 1926 certificates of beneficial interest were issued to other persons, and at that time and at all times thereafter, W. H. Pearce, Jr., was the only original trustee who continued to act

as trustee and was the only trustee who was also a beneficiary. Notice of the change in organization to a trust was served on all those with whom the partnership had dealt, and the declaration of trust was recorded both in Cook county and in DuPage county.

In 1929, W. H. Pearce & Co. entered into a contract with the Joint Commission of the Capitol Commission and with the Board of Regents of the University of Nebraska, for the construction of an underground high pressure steam line from the university power plant to the capitol building, and furnished a bond for the performance of the contract, with appellant as surety. This bond was executed by appellant pursuant to a written application therefor, dated July 8, 1929, and signed: "W. H. Pearce & Co. by W. H. Pearce, Jr." A seal was affixed, to the instrument, reading: "W. H. Pearce & Co., Chicago, Illinois, Trustee's Seal 1920." The application therefor contained an agreement to indemnify, save harmless and pay appellant all liability, damages, loss, costs, charges and expenses of whatever kind or nature, including counsel and attorney's fees, incurred by appellant or its representatives, in consequence of its execution of the bond. Prior to that time appellees had no dealings as partners, trustees, individually, or otherwise, with appellant, who, at the outset, was specifically informed by W. H. Pearce, Jr., that the organization was not a corporation or a partnership, but was a common-law trust, and the stock record book and the trust agreement were exhibited to appellant's representative.

After the completion of the underground steam line the State of Nebraska brought suit against appellant for damages on account of an alleged breach of the construction contract. The suit was successfully defended in the trial court and in the Supreme Court of Nebraska. W. H. Pearce & Co. co-operated with appellant in defending the suit, and W. H. Pearce, Jr. testified they "went broke" in so doing. Thereafter

appellant brought this suit in the circuit court of Du-Page county, against appellees, for expenses allegedly incurred by appellant in defending the Nebraska suit. The action was brought under the above-mentioned provision of the application for the bond. Upon a trial by the court without a jury, judgment was entered in favor of appellees, and this appeal followed.

Appellant invokes the rule that when the beneficiaries of an alleged trust are given control over the management of the trust property, the so-called trust agreement, as a matter of law, creates a partnership. Its counsel contends that inasmuch as W. H. Pearce, Sr., and W. H. Pearce, Jr., constituted a majority of the trustees, were sole beneficiaries of the trust and had control of its business, they never, in fact, divested themselves of their control over the partnership property. They insist that the situation was the same both before and after the trust agreement was made, and that the trust agreement had no effect other than to continue the partnership relation theretofore existing between them. Counsel calls attention to the following provisions of the trust agreement: Under Paragraph Third (A) the trustees are to be three in number, but at any annual, or regular or special meeting of the trustees, the board of trustees may, by the trustees, be decreased or increased to any uneven number, not less than one or more than fifteen. Under Paragraph Fifth (A) it is provided that the trustees "may make, adopt, amend or repeal such by-laws, rules and regulations, not inconsistent with the terms of this instrument, as they may deem necessary for the conduct of their business or for the government of themselves, their agents or representatives." Under Paragraph Sixth (C) any trustee may acquire, own or dispose of beneficial interests in the trust to the same extent as if he were not a trustee thereof.

Appellees take the position first that if a trust agreement limits the control to the trustees, it is a valid

trust irrespective of who the trustees may be and second that even if the trust in this case was ineffectual at its inception because two of the trustees and the beneficiaries were the same persons, it became valid as soon as there was a diversity in the personnel of the trustees and the beneficiaries.

In *Schumann-Heink v. Folsom,* 328 Ill. 321, 327, the court sets out in the opinion the well established rule in such cases, in the following language: "There are also essential differences between a business trust and a partnership, but there are times when it is difficult to determine whether the declaration of trust relieves the trustees and shareholders from liability as partners. A partnership is, in effect, a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his co-partner. (*State v. Cosgrove,* 36 Ida. 278, 210 Pac. 393; *Fougner v. First National Bank of Chicago,* 141 Ill. 124.) Where under the declaration of trust the unit holders retain control over the trustees and have authority to control the management of the business the partnership relation exists. (*Frost v. Thompson,* 218 Mass. 360, 106 N. E. 1009; *Hart v. Seymour,* 147 Ill. 598; Dunn on Business Trusts, sec. 140 *et seq.*) On the other hand, where the declaration of trust gives the trustees full control in the management of the business of the trust and the certificate holders are not associated in carrying on the business and have no control over the trustees, then there is no liability as partners." (Citing numerous cases.) To the same effect is *Hecht v. Malley,* 265 U. S. 144, 146, and *Berneson v. Fish,* 135 Cal. App. 588, 28 P. (2d) 67.

We agree with the claim of appellees that the trust agreement in this case goes further than a positive vestiture of powers in the trustees, and negatives any right of control in the beneficiaries. After generally and in detail vesting complete control of the business and the property in the trustees, too voluminously set

out to be repeated here, Paragraph Fourth (F) concludes with these words: "and the right of said Trustees to manage, control and administer the said trust estate shall be absolute and unconditional, free from the control or management of the Certificate Holders." And Paragraph Ninth (C) provides: "The ownership of interests hereunder shall not entitle the Certificate Holder to any title in or to the trust property whatsoever, or . . . for an accounting, or for any voice or control whatsoever of the trust property or of the management of said property or business connected therewith by the trustees."

Section 99 of the American Law Institute's "Restatement of the Law" on Trusts, lays down this principle: ". . . there can be a trust where there are several beneficiaries who are also trustees. In such a case each of the beneficiaries has an equitable interest which is separate from the legal interest held by the whole group. As trustees they hold the legal title as joint tenants, and ordinarily they hold the beneficial interests as tenants in common."

In *Taussig Co. v. Poindexter*, 224 Mo. App. 580, 30 S. W. (2d) 635, 637, it was held that where a trust agreement was of no effect when executed, because the entire beneficial interest was placed in the trustees, yet, as soon as other parties became holders of beneficial interests, so that their estate and that of the trustees was separate and distinct, and the trustees were in fact trustees for them as well as for themselves, then life was thereby imparted to the trust agreement and it became a valid instrument. No authority contrary to that decision or to the rule in the "Restatement of the Law" on Trusts is cited by appellant. In this case, the entire beneficial interests were never held by the trustees, and other persons acquired beneficial interests in 1926.

Section 6 of the Uniform Partnership Act (Ill. Rev. Stat. 1941, ch. 106½, par. 6 [Jones Ill. Stats. Ann. 97.06]), provides: "A partnership is an association

of two or more persons to carry on as co-owners a business for profit.'' At the inception of the trust in this case, one of the trustees, and later, two of them, had no beneficial or equitable interest in the trust. While the trustees, as a group, had the legal title of the corpus of the trust for the purpose of carrying on the business of the trust, none of them, as such trustee, shared in the profits, which belonged solely to the beneficiaries. The statutory definition of a partnership does not fit the factual situation here. The fact that the same persons are trustees and beneficiaries of a trust does not destroy its validity. (*Burbach v. Burbach,* 217 Ill. 547; *Summers v. Higley,* 191 Ill. 193.) There is no merit in appellant's attempt to distinguish these cases because the settlor of the trust was a person other than trustee or beneficiary.

In *Neville v. Gifford,* 242 Mass. 124, relied upon by appellant, the court held that the trust agreement created a partnership but the opinion discloses that the certificate holders in that case could increase or diminish the number of trustees, remove any trustees except the original two, fill vacancies in the board, modify or alter the trust, with certain specified exceptions, and a majority in interest of the shareholders could terminate the trust at any time prior to that limited for its duration. Under analogous provisions of the trust agreement, there was a like holding in *Rand v. Morse,* 289 Fed. 339, and *Bank of America National Trust & Savings Ass'n v. Scully,* 92 F. (2d) 97, 103, also relied upon by appellant. In the trust agreement in this case, such powers are expressly vested in the trustees. Those cases have no application here. In the *Schumann-Heink* case, 328 Ill. 321, where the provisions of the trust agreement were comparable with those in this case, it was held that the trust was valid, and the defendant was not liable as a partner.

Appellant claims that the failure to include words of limitation of liability in the application for the bond estops appellees from asserting that appellant

had knowledge of the trust, and makes the trustees personally liable. This claim of appellant that appellees were so personally liable, is inconsistent with the contention that they were not trustees at all, because of the alleged invalidity of the trust agreement, and that they were liable as partners under the prior partnership. Here the complaint alleges the defendants were partners, and the case was tried on that theory. It is now too late to claim they were trustees and liable individually for a failure to include words of limitation of liability in the application for the bond. Moreover, such a claim would eliminate W. H. Pearce, Sr., because he did not sign the application, yet appellant insists he is liable. Even where one of three trustees signed a note with the name of the settlor, who was also the beneficiary of the trust, "per W. L. Taylor, trustee," whereas the trust agreement authorized such action only by all three of the trustees, the trust agreement having been exhibited to the cashier of the lending bank, and the transaction having been entered into in good faith, it was held in *Equitable Trust Co. of Chicago v. Taylor*, 330 Ill. 42, under the doctrine in *Seeberger v. McCormick*, 178 Ill. 404, that as both parties were cognizant of the facts as to the trustee's authority, the trustee was not personally liable either *ex contractu* or *ex delicto*. In the instant case appellant's representative examined the trust agreement, which provides in Paragraph Sixth (H) that neither the certificate holders nor the trustees shall be liable for any debt or liability contracted by the trustees, or growing out of, or arising from the execution of the trust. The trust, and not the trustees personally were liable.

The contention that appellees failed to establish that the partnership between them was dissolved and that there is no proof that W. H. Pearce, Sr., ever gave notice of his withdrawal therefrom, is based on the claim that appellant knew from the examination

of the trust instrument that the trust was invalid. With this claim we are unable to agree. Furthermore, the contention is answered by the testimony that all the parties with whom the partnership had dealt were notified of the change in the character of the organization and that appellant was specifically informed that it was not a partnership, but was a common-law trust, before it accepted the application for the bond.

Our conclusion is that the trust agreement is valid, and appellees are not liable to appellant individually or as partners for any of the reasons urged. It is therefore, unnecessary to discuss other issues. The judgment of the circuit court is affirmed.

*Judgment affirmed.*