Morris B. Kallison and Nick Christopoulos, Appellants, v. Harris Trust and Savings Bank, Merchandise National Bank and Samuel Lamm, Appellees.

Gen. No. 44,438.

34

Opinion filed May 10, 1949. Released for publication July 18, 1949.

SHULMAN, SHULMAN & ABRAMS, of Chicago, for appellants; MEYER ABRAMS, of Chicago, of counsel.

ECKERT & PETERSON and CHAPMAN & CUTLER, all of Chicago for certain appellee; WILLIAM U. BARDWELL and OWEN RALL, both of Chicago, of counsel.

HEINEKE & CONKLIN, of Chicago, for certain other appellee; CLARENCE R. CONKLIN, of Chicago, of counsel.

MICHAEL B. RODERICK, of Chicago, for certain appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiffs as copartners brought suit against defendants to recover $12,077.99 on the indorsement of two checks alleged to have been forged by their other partner, Samuel Lamm. The complaint consisted of two counts, the first at law, and the second in chancery for an accounting and dissolution. Defendant Lamm's motion to dismiss the second count was overruled, but the court sustained a like motion made by all the defendants as to the first count for failure to state a cause of action, and entered an order dismissing that count, from which plaintiffs have taken an appeal.

The sole question presented is as to the sufficiency of the first count of the third amended complaint (hereinafter referred to as the complaint), from which it appears that on June 25, 1946, a partnership agreement was entered into by plaintiffs with Lamm, wherein they agreed to conduct their partnership business under the firm name and style of Commander Products, at 1260 South Michigan avenue in Chicago. To the initial capital for the partnership, each of the plaintiffs contributed $12,500 in cash. Lamm's contribution consisted of an assignment to the partnership of his interest to an exclusive distribution contract with Globe Engineering Company which was appraised at $12,500.

Paragraph 9 of the partnership agreement provided that none of the parties should, without the consent of the others, sign any written documents of indebtedness on behalf of the partnership. In paragraph 12 it was agreed that a complete and accurate record book of the partnership business should be kept, subject to the inspection of each partner. Paragraph 13 provided that none of the parties should accept any bill, check or other security in the name of the firm except in the due course of the partnership business, and in paragraph 14 it was stipulated that "all moneys which shall from time to time be received for and on account of the co-partnership, not required for current expenses, shall be deposited immediately in a bank, chosen by the co-partnership as the depositary of the co-partnership funds, in the same checks, drafts, bills, cash or remittances in which they are received, and all disbursements for and on account of the co-partnership shall be made by check on such bank or banks; any two of the parties hereto may sign checks."

It is further alleged in the complaint that at the date of the execution of the partnership contract, Lamm orally agreed to close his individual account in the name of Commander Products Company at the bank

where the account was carried by him, and not to do any business under that name. The only account which the copartners maintained was at the First National Bank of Chicago in the name of the co-partnership, and prior to February 14, 1947 all checks received from various customers, including Spiegel, Inc., were made payable to Commander Products Co., 1260 South Michigan avenue, Chicago, were indorsed as follows: "Pay to the order of the First National Bank of Chicago, Commander Products," and were deposited to the co-partnership account with that bank. Checks of that nature and description were issued by Spiegel, Inc. on the Harris Trust and Savings Bank. One check, in the amount of $3,528, was dated January 17, 1947, and the Harris Trust and Savings Bank paid that when deposited to the account of the copartnership at the First National Bank of Chicago. Another check by Spiegel, Inc. was drawn in like manner on the Manhattan Company of New York, similarly indorsed and deposited to the account. That check was dated January 2, 1947.

It is alleged that without the knowledge or consent of plaintiffs, Lamm, with intent to cheat and defraud the copartnership and to appropriate the funds to his own use, and not in the regular course of business, personally called on Spiegel, Inc. on or about February 14, 1947 and received from it a check payable to the order of Commander Products Co., 1260 South Michigan Avenue, in the amount of $1,037.23, drawn on the Harris Trust and Savings Bank, and placed the indorsement thereon: "Pay to the order of Merchandise National Bank of Chicago, 5825 Chicago, Ill. 5825, Commander Products Co."; that thereafter, without knowledge of the plaintiffs, he again called at Spiegel, Inc. and procured a check from it dated February 20, 1947 in the amount of $11,040.76, payable to the order of Commander Products Co., 1260 South Michigan avenue, Chicago, Illinois, on the Harris Trust and

Savings Bank, which was similarly indorsed; that both checks were deposited to his personal account then kept at the Merchandise National Bank of Chicago; that on the date of the deposit of these checks the assets of the copartnership consisted of not more than $7,500, and the liabilities exceeded $18,000; that plaintiffs first discovered the collection of the amount evidenced by the check dated February 20, 1947 on or about February 24, 1947, whereupon they immediately notified Spiegel, Inc., as well as Merchandise National Bank, and thereafter, March 1, 1947, they addressed a written communication to the Harris Trust and Savings Bank and to the Merchandise National Bank "notifying them of the forgeries and demanding payment of the checks to the co-partnership"; that thereafter, on March 9, 1947, they discovered the collection of the check in the amount of $1,037.23, and on the following day notified the two banks in writing "of the forgery of that check." Both banks declined payment.

The complaint further alleges that at the time of the deposit of the check in the amount of $11,040.76 plaintiffs discovered that Lamm had in his personal account at the Merchandise National Bank approximately $693; that although the check is dated February 20, 1947, he actually received it about 2:00 p.m. on February 21, 1947, and deposited it at the bank after banking hours, drew against the uncollected check to his personal account $8,600, and the bank "then and there cashed that check out of the proceeds of the uncollected check which was deposited after banking hours"; that thereafter on February 24, 1947, Lamm drew another check on that bank in a similar manner in the amount of $3,100, leaving in the account the approximate sum of $34.

It is alleged that Spiegel, Inc. had no business dealings with Lamm individually, all transactions being with the copartnership, and that the two checks issued

by Spiegel, Inc. were intended to be issued and delivered to Lamm to be deposited to the copartnership account.

Plaintiffs' claim under count 1 rests primarily on the contention that Lamm committed a forgery in indorsing the checks which were made payable to the Commander Products Co., the name used by him before entering into partnership with plaintiffs, and their counsel frankly conceded on oral argument that if he could not establish forgery on the part of Lamm, his clients could not recover against either of the banks.

Within the salient provisions of the partnership agreement, it seems clear to us that Lamm was not only not prohibited from indorsing checks payable to the partnership but was required to do so, inasmuch as checks had necessarily to be indorsed in order to comply with paragraph 14 of the agreement. He certainly had ostensible authority to indorse checks. The vice of the transaction was not the indorsement of the checks, but Lamm's subsequent failure to deposit them in the partnership account. This constituted a violation of duty to his partners, but it did not make his indorsement a forgery. None of the cases cited by plaintiffs (*People v. Esrig*, 240 App. Div. 300, 270 N. Y. S. 372; *Quick Service Box Co., Inc. v. St. Paul Mercury Indemnity Co. of St. Paul*, 95 F. (2d) 15; *Segal v. National City Bank of New York*, 183 Misc. 994, 52 N. Y. S. (2d) 727, reversed on another point 269 App. Div. 986, 58 N. Y. S. (2d) 261; *People v. Van Skander*, 20 Cal. App. (2d) 248, 66 P. (2d) 1228, and *Commercial Casualty Ins Co. v. Pearce*, 320 Ill. App. 221) hold, under similar facts, that an indorsement such as this was, constitutes forgery. Three of the five decisions cited are criminal cases in which breach of plain restrictions of partnership agreements prohibiting the signing of names to checks on the partnership account or unauthorized indorsements were involved. None of the cases cited applies the rule for which plaintiffs contend

to third persons who act in reliance on the partner's signature, without knowledge of his want of authority. Nor is either of the two civil cases cited, the *Quick Service Box Co.* and the *Segal* opinions, applicable to the circumstances of this proceeding. In the *Quick Service Box Co.* case, the forgery, which was there held to be covered by a fidelity bond, was effected by the issuance of checks in the name of the employer in violation of authority and in disobedience of express instructions. In the *Segal* case the court held that a secret partner of a drawer of a check, who had, himself, no right to draw the checks, had no actual or implied authority to indorse the payee's name by mere reason of the fact that he was a secret partner of the drawer.

Concededly neither of the banks had knowledge that the checks in question belonged to the partnership because they had never been advised of the formation thereof. Under the circumstances, *Bacher v. City Nat. Bank of Philadelphia,* 347 Pa. 80, 31 A. (2d) 725, and *Strong v. City Nat. Bank of Philadelphia,* 355 Pa. 390, 50 A. (2d) 323 (which followed and approved the *Bacher* opinion), are more nearly in point. These cases, the second an "aftermath" of the first, involved misappropriation by an attorney representing the administratrix of an estate. He had written power of attorney authorizing him to indorse all checks payable to the estate and to deposit the funds in his attorney's account. He indorsed two checks payable to the estate and deposited them in his *personal* account. The estate sought to hold the cashing bank liable on the ground that the attorney's authority to indorse the checks in the name of the estate was limited to the indorsement of checks which he had deposited in his attorney's account. In the earlier opinion the reviewing court, in rejecting this argument, said that "if no such authorization [to indorse the checks] had existed, the bank clearly would have been liable for paying out

funds on the basis of an unauthorized indorsement of the payee's name. But Ballen [the attorney] did have the power to indorse, and if the bank did not actually know that he had been directed to deposit the checks in his attorney's account it would not be liable because of his violation of this instruction and his misappropriation of the funds after receiving them upon his authorized indorsement; it was not under a duty to investigate whether he was committing a breach of his obligation as fiduciary in depositing the checks to his personal credit.'' A concurring opinion in the earlier citation clearly points out that Ballen's authority to indorse could not be wiped out by his subsequent misappropriation of the checks by depositing them in his personal account, saying: ''*As far as the bank was concerned,* Ballen's authority to indorse was *not* conditioned upon his depositing the funds so collected in his attorney account. His failure so to deposit was a breach of his trust, but the bank was protected in accepting the indorsement by the second thing authorized in his letter of attorney, to wit: 'to indorse any and all checks.' What he did with the funds he collected by the authorized indorsement was of no legal moment to the bank unless it had 'actual knowledge that the fiduciary' was 'committing a breach of his obligation as fiduciary in making such deposit' in his personal account. (See Sec. 9 of the Uniform Fiduciaries Act of 1923, P. L. 468.)'' (Italics supplied by the Pennsylvania Court.) These well-reasoned decisions indicate that violation of a duty to deposit an indorsed check in a particular account, which is all that the partnership agreement in the case at bar provided, does not make a forgery out of the indorsement. Plaintiffs' contention that Lamm's indorsement constitutes a forgery is founded entirely on the premise that ''Lamm had no power to indorse checks payable to the partnership for deposit to his individual account which was not a partnership account,'' and their counsel argue that the partnership agreement required two things: (1) that checks pay-

able to the partnership shall be the same checks deposited in the bank where the partnership account was kept, and (2) that the withdrawal of the funds was to be by check signed by two of the partners; and "here," they say, "both terms of the agreement were violated." We can readily agree that Lamm violated the provisions of the agreement as to his partners, but it would be a strained construction to hold that he had no authority to indorse checks which the bank, without knowledge of the existence of the partnership, was called upon to honor.

The banks contend that even if the checks were forged (which of course they do not concede), plaintiffs are precluded from relying on the forgery. Section 23 of the Uniform Negotiable Instruments Law (Ill. Rev. Stat. 1947, ch. 98, par. 43 [Jones Ill. Stats. Ann. 89.043]) provides as follows: "Where a signature is forged or made without authority, it is wholly inoperative, and no right to retain the instrument or to give a discharge thereof, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." There is nothing in the complaint to attribute to the cashing bank knowledge that the checks belonged to the partnership. Lamm had done business under the name "Commander Products Co." and during that time had an account under that name in the Merchandise National Bank. Without notifying the bank that they had become partners of Lamm, the plaintiffs had adopted a name deceptively similar to Lamm's trade name, merely leaving off the "Co." Moreover, they permitted checks payable to the partnership to be made payable to the name "Commander Products Co.," which was not the name of the partnership but was Lamm's individual trade name. This, under fundamental principles of law, constituted an estoppel. *Arnold v. Hart,* 176 Ill. 442; *Wiser v. Springside Coal*

*Min: Co.,* 94 Ill. App. 471. In *Hubbard v. TenBrook,* 124 Pa. St. 291, 16 A. 817, the agent of undisclosed principals conducted a grocery business in the agent's name. On discovering the existence of the agency, a creditor of the agent sued the undisclosed principals, who sought to defend on the ground that the agent had violated instructions in buying on credit. The court, in denying this defense, said: "No exact precedent has been cited. None is needed. The rule so vigorously contended for by the plaintiff in error that those dealing with an agent are bound to look to his authority, is freely conceded, but this case falls within the equally established rule that those clothing an agent with apparent authority, are, as to parties dealing on the faith of such authority, conclusively estopped from denying it." Plaintiffs certainly permitted Lamm to continue to hold himself out as a sole trader doing business under the name of Commander Products Co., and should now be estopped from contending that checks issued in that name which were the actual property of Commander Products, a partnership, could not be indorsed by Lamm. See to the same effect *Dixon Livery Co. v. Bond,* 117 Va. 656, 86 S. E. 106; *Locke v. Lewis,* 124 Mass. 1; and *Stacey v. Decy,* 101 Eng. Reprint 1021.

It is one of plaintiffs' contentions that the doctrine of innocent holder is inapplicable to a forgery. We have no quarrel with the rule announced in the cases cited (*People v. Heinzelman,* 351 Ill. 402, and *Cosmopolitan State Bank v. Lake Shore Trust & Savings Bank,* 343 Ill. 347), but in view of our conclusion that there was no forgery, the doctrine becomes inapplicable under the circumstances of this case.

For the reasons indicated we are of the opinion that the circuit court properly dismissed the third amended complaint against the two banks, and the judgment is therefore affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.