NATIONAL BANK OF MONTICELLO, Plaintiff and Counterdefendant and Third-Party Plaintiff-Appellant, v. FRANK M. QUINN, Defendant and Counterplaintiff-Appellee (Marine American State Bank, f/k/a American State Bank of Bloomington, Defendant and Counterdefendant and Third–Party Defendant-Appellant).

Fourth District   No. 4—86—0794

Opinion filed July 23, 1987.

James P. Ginzkey, of Costigan & Wollrab, P.C., of Bloomington, for appellants.

William J. McKenna, Jr., of Hopkins & Sutter, of Chicago, for appellee.

JUSTICE LUND delivered the opinion of the court:

Defendant-counterplaintiff Quinn alleges plaintiff-counterdefendant-third-party plaintiff National Bank of Monticello (National) paid a check drawn on Quinn's account at National over an unauthorized endorsement. Both National and defendant-third-party defendant Marine American State Bank, f/k/a American State Bank of Bloomington (American State), assert the endorsement was the authorized endorsement of Quinn's fiduciary. The circuit court granted summary judgment for Quinn.

On June 15, 1984, Quinn drew a check for $30,000 on his account at National, payable to "Limetree Beach Associates, Ltd." (Limetree), an investment partnership in the process of being formed. It was delivered the same day to Dan L. Wey, the sole individual general partner of Limetree. Limetree's account was at American State with Wey as one of two authorized signatories. Wey had another account at American State for his accounting business, a sole proprietorship. Wey was one of two authorized signatories for that business account.

Wey endorsed the check from Quinn as follows: "Deposit 049 580." Bank account No. 049–580 was for the sole proprietorship and not Limetree. The check was delivered to American State and credited to Wey's sole proprietorship account. American State endorsed the check "Pay Any Bank P.I.G. [prior endorsements guaranteed] AMERICAN STATE BANK, Bloomington, Illinois." The check was processed through normal banking channels to National, which paid the check and charged Quinn's personal account in the amount of $30,000.

Quinn subsequently demanded that National recredit his account. National did not do so. Wey and Limetree became insolvent.

National filed a two-count complaint for declaratory relief against Quinn and American State. In count I, National asked the court to determine whether it owed Quinn a duty to recredit Quinn's account. In count II, National asked for an order requiring American State to compensate National for any liability it owed to Quinn.

Quinn answered the complaint and filed a counterclaim solely against National. Quinn asked the court for an order requiring National to recredit his account in the amount of $30,000 plus interest.

In response to this counterclaim, National filed a third-party com-

plaint against American State. National asked for reimbursement of any amounts owed Quinn because of American State's endorsement on the check. American State answered denying liability.

Quinn moved for summary judgment against National only. National and American State moved jointly for summary judgment against Quinn. At the hearing, the parties presented a stipulation of facts to the court.

The circuit court granted summary judgment for Quinn and denied the banks' motion. In so ruling, the court found Wey's endorsement invalid. Further, American State had breached its duty to inquire into the validity of the endorsement. Therefore, it was not authorized to negotiate the check and neither was National. National and American State appeal.

The issue in this case is whether Wey's endorsement was an authorized endorsement under the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1983, ch. 26, par. 1—101 *et seq.*) and passed to American State good title to the check.

■ Prior to addressing this issue, we must deal with one preliminary matter. The trial court relied heavily on Limetree's offering memorandum and limited partnership agreement in finding that Wey was unauthorized to endorse the check to his sole proprietorship account. Neither bank had these partnership documents. American State, the depository bank, had Limetree's signature card. The trial court held that the American State had an absolute duty to verify endorsement of Wey, Limetree's agent. While we do not quarrel with this holding, we believe the trial court went too far in requiring American State to go beyond the signature card to determine Wey's authority. The signature card was evidence of the contract between American State and Limetree. As long as payment was made according to the contract, the bank was discharged from further liability. (*Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 288, 345 N.E.2d 503, 505; *Miller v. First Granite City National Bank* (1953), 349 Ill. App. 347, 351, 110 N.E.2d 651, 652; see H. Bailey, Brady on Bank Checks sec. 12.3, at 12—6 (5th ed. 1979).) American State was not on notice of any irregularity or impropriety on Wey's part. Under the circumstances of this case and in light of our holding below, American State was justified in relying on the signature card to establish Wey's authority.

The banks argue that the trial court erred when it found Wey's endorsement to be unauthorized. The banks state that when an agent or fiduciary merely deposits in his individual account a check endorsed by him but payable to the principal, the depository bank is not

charged with notice of misappropriation. The banks rely on two sources to support their argument: the common law, and the Uniform Fiduciaries Act, which has been adopted in Illinois in "An Act concerning liability for participation in breaches of fiduciary obligations" (the Uniform Fiduciaries Act) (Ill. Rev. Stat. 1983, ch. 17, par. 2001 *et seq.*). Under both sources, the banks are correct.

Under what amounts to a majority rule, banks are not put on notice of a misappropriation by an agent or fiduciary because the agent or fiduciary deposits to his own account a check endorsed by him in his fiduciary capacity. (Annot., 57 A.L.R. 925, 930 (1928); 10 Am. Jur. 2d *Banks* secs. 521 through 526, at 492-503 (1963); accord *Kallison v. Harris Trust & Savings Bank* (1949), 338 Ill. App. 33, 86 N.E.2d 858.) The exceptions to the rule occur when the bank has notice or is charged with notice under the circumstances that the agent is misappropriating the funds. 10 Am. Jur. 2d *Banks* sec. 521, at 492-93; sec. 524, at 497-98 (1963).

█ Quinn cites several cases in opposition. These cases are not germane. All but one of the cases involve a situation where the depository bank for the fiduciary's personal account was at a bank other than where the principal's account was kept. (See *Bellflower Ag Service, Inc. v. First National Bank & Trust Co.* (1985), 130 Ill. App. 3d 80, 473 N.E.2d 998.) It has long been held that a person dealing with an agent takes the risk as to the extent of the agent's authority and is bound to inquire into his authority. (*Jackson Paper Manufacturing Co. v. Commercial National Bank* (1902), 199 Ill. 151, 165, 65 N.E. 136, 141.) In the instant case, the depository bank for the fiduciary was also the depository bank for the principal. A quick check by a teller of the partnership's signature card would reveal Wey as an authorized signatory. The one case cited where the depository bank had both the fiduciary's and the principal's accounts is inapplicable to the instant case. (*Empire Moving & Warehouse Corp. v. Hyde Park Bank & Trust Co.* (1976), 43 Ill. App. 3d 991, 357 N.E.2d 1196.) In *Empire Moving*, the bank clearly violated the terms of the corporate resolution which it had on file. American State followed the terms of its contract as evidenced by the signature card.

Even more appropriate is the Uniform Fiduciaries Act. "The purpose of the Uniform Fiduciary Act is to facilitate banking and financial transactions and place on the principal the burden of employing honest fiduciaries." (*Johnson v. Citizens National Bank* (1975), 30 Ill. App. 3d 1066, 1072, 334 N.E.2d 295, 300.) Section 9 of the Uniform Fiduciaries Act (Ill. Rev. Stat. 2983, ch. 17, par. 2009) states, in part:

"If a fiduciary makes a deposit in a bank to his personal

credit *** of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks, *** the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith."

This section applies to the instant case. American State was not put on notice of any wrongdoing simply because Wey endorsed the check to his personal account. The only condition imposed is that Wey have the authority to endorse. Wey was a signatory for the Limetree account, and, therefore, he had authority to endorse.

Quinn argues the Uniform Fiduciaries Act does not apply if he seeks relief solely from his drawer-bank, National. We reject this argument. It places an unreasonable burden upon the only clearly innocent party. The burden is better placed on one of the two parties that dealt directly with the unscrupulous agent. Those two parties are Quinn, who as coprincipal entrusted his money to the agent, and American State, which as depository bank has the ability to examine its contract to determine whether the agent has the authority to endorse. Under the Uniform Fiduciaries Act, the burden in this case was placed on Quinn.

■ It is clear under the principles established through common law and under the Uniform Fiduciaries Act that American State acted properly in permitting Wey to endorse the check to his personal account. Quinn's account was properly credited in the amount of $30,000. For these reasons, we reverse the order of the circuit court granting summary judgment for Quinn, and, pursuant to our authority under Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)), we order that summary judgment be granted in favor of National and American State.

Reversed and remanded.

SPITZ, P.J., and GREEN, J., concur.