## In re DICKENS.

### (District Court, S. D. Alabama, S. D. December 21, 1909.)

### No. 685.

BANKRUPTCY (§ 136*)—ORDER REQUIRING BANKRUPT TO TURN OVER PROPERTY —SUFFICIENCY OF EVIDENCE.

In view of the fact that the failure of a bankrupt to obey an order to turn over money or property to his trustee is punishable by imprisonment for contempt, such an order should only be made on the clearest proof of his present ability to comply with it, since contempt proceedings cannot be invoked as a means of coercing the payment of debts, or to punish a bankrupt for transferring his property with intent to hinder, delay, or defraud his creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

In the matter of C. C. Dickens, bankrupt. On review of order of referee, and petition of trustee for an order adjudging the bankrupt in contempt. Order set aside, and petition denied.

On a referee's order requiring the bankrupt to turn over to the trustee $20,000, and to deliver to him a large number of bonds, the trustee applies for an order committing the bankrupt for contempt for failing to comply with the referee's said order.

Gregory L. & H. T. Smith, for trustee.

J. W. Tharp and F. W. Bacho, for bankrupt.

TOULMIN, District Judge. This matter comes on to be heard upon a review of the said order of the referee, and also upon his certificate of the bankrupt's failure to comply with the order, and upon

the application of the trustee that the bankrupt be committed for contempt for such failure.

The Court of Appeals of this circuit in Samel v. Dodd, 142 Fed. 68, 73 C. C. A. 254, in speaking of a summary proceeding of this nature, which is invoked for the purpose of bringing within the reach and control of the bankruptcy court specific property alleged to be in the possession of the bankrupt, and by him unlawfully withheld, said:

"The order should describe the property with reasonable certainty in order to assure its identity, and the command of the court to the bankrupt should be to surrender the very property sought to be recovered. In such cases the order to deliver should be based on clear and convincing proof that the party charged has possession and control of the property, since the penalty of disobedience is imprisonment for contempt. The order operates in personam, upon the person of the offender, by requiring him to do the thing commanded upon pain of punishment for refusal; and such an order is erroneous, as matter of law, unless it plainly and affirmatively appear from the record that he has the power to comply with its requirements."

The court further said:

"While bankrupt courts are invested with power to require bankrupts to surrender their property, and to enforce obedience to the order by attachment for contempt, yet the power is far-reaching and drastic, and should be exercised with cautious discretion, and it should never be exercised except in a plain case."

In Boyd v. Glucklich, 116 Fed. 139, 53 C. C. A. 459 (8th Circuit, C. C. A.), the court said:

"The [bankrupt] act makes the amplest provision for punishing fraudulent conduct and false oaths on the part of the bankrupt. The fraudulent bankrupt gains nothing by being adjudged a bankrupt, but is punished criminally and denied a discharge. And his creditors lose none of their rights, for they may resort to all the remedies known to the law for the collection of their debts against the bankrupt, the same as though he had never been adjudged a bankrupt. There is, therefore, no occasion for the exercise by the court of bankruptcy of any doubtful power of jurisdiction, either for the purpose of punishing the bankrupt or protecting his creditors."

In Re Mize et al. (D. C.) 172 Fed. 946, the learned judge said:

"The order of the referee requiring the payment by the bankrupt, if it were only enforceable by civil proceedings, would in my opinion be sustained by the inferences fairly to be drawn from the record. Disobedience of the order imposes on the bankrupt punishment for contempt of the bankrupt court, which would probably consist of imprisonment until the bankrupt complied with the order. In view of the method of enforcement of the order, the rule is that the disobedience must be established beyond reasonable doubt, or, as otherwise expressed, in doubtful cases punishment for constructive contempts should not be inflicted. * * * The courts have been very careful not to permit contempt proceedings to be converted into a means of coercing payment of debts from funds other than assets wrongfully withheld by the bankrupt, and for this reason have required the clearest evidence that the bankrupt had the assets in his possession and the present ability to turn them over to the trustee as directed by the order."

The authorities are agreed that a bankrupt should not be committed for contempt for failing to obey an order requiring him to turn over money or property to his trustee, unless the court is satisfied beyond a reasonable doubt of his present ability to comply with the order. While the admitted receipt of bonds or money by a bank-

rupt, and his failure to clearly explain or account for their disappearance, may be a good or sufficient ground to suspect, or even believe, that he has not dealt fairly with his creditors, or acted in good faith with the trustee of his estate in bankruptcy, or that he has disposed of his property with the intent to hinder, delay, or defraud his creditors, this does not necessarily establish the present ability of the bankrupt to. comply with the order of the court and to deliver to the trustee a specific sum of money and a certain number of specified bonds.

The order of the referee in this case is that the bankrupt shall turn over to the trustee in bankruptcy the sum of $20,000. I do not find in the record sufficient evidence to justify an order requiring the bankrupt to. turn over to the trustee the specific sum of $20,000. As I understand the evidence and the contention of the petitioner, an order requiring the bankrupt to turn over $40,000 or $50,000, or more, might as well have been made. There is no evidence clearly or satisfactorily showing that the bankrupt had the sum of money named in his possession or control on November 4, 1909, when the order was made, or on October 26, 1909, when the petition praying said order was filed, or that he recently had such sum of money prior thereto. There is evidence in the record that at some time prior to said dates the bankrupt was shown, in a certain proceeding in the state chancery court, to have been short in the sum of $20,000 and more in his accounts with the English Manufacturing Company, of which he was the surviving partner, conducting its business. But that fact falls far short of establishing the fact that he had that sum of money in his possession on or about October 26, 1909. We may surmise from the evidence that he had that amount of money or much more in the past year or two; but conjecture, or speculation, or mere inferences, are not sufficient in this proceeding. There must be clear and convincing proof on which the court must act in making an order for contempt.

The same may be said as to the bonds required by the referee's order to be delivered to the trustee. It appears from the record that about two years before said order was made the bankrupt received and had in his possession a large number of bonds. The evidence, however, shows that many of them have been hypothecated and some have been sold. The bankrupt testifies that others have been given and delivered to his sisters and other relatives in Virginia. If this testimony be true (and it has not been satisfactorily shown to be untrue), then he had not these bonds, or any particular bonds, in his possession and control when the referee's order was made, and no order for contempt can be predicated on it. The bankrupt denies on oath that he has in his possession either the money or bonds sought to be recovered.

While the proceedings in bankruptcy against the bankrupt were instituted in January, 1909, he was not adjudicated a bankrupt until July, 1909. In the interim he had ample time to dispose of any money, bonds, or other property he may have had at the time of the filing of the petition in bankruptcy against him, and we may reasonably suppose that he did so, particularly if his intent was to hinder, delay, or defraud his creditors, as appears to be the contention on the evi-

dence adduced against him. This proceeding cannot be invoked as a means of coercing payment of debts, or to punish the bankrupt for transferring his property with the intent to hinder, delay, or defraud his creditors, if such be the fact.

I am not satisfied, beyond a reasonable doubt, of the bankrupt's ability to have complied with the order of the referee at the time said order was made. Said order is set aside, and the petition of the trustee for an order adjudging the bankrupt, C. C. Dickens, to be in contempt of said order, is denied.