488 F.2d 794
 In the Matter of CONTEMPORARY APPAREL, INC., Debtor.
Frank O'CONNELL, Substituted Receiver of Contemporary
Apparel, Inc. and the Petitioner in Contempt
Proceedings Certified to the Court by a
Referee, Appellant,
v.
Zelman SCHECK, Appellee.
 No. 73-1256.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 11, 1973.
Decided Dec. 4, 1973.
 
 M. E. Maurer, Philadelphia, Pa., for appellant; Leon S. Forman, Wexler, Weisman, Maurer & Forman, Philadelphia, Pa., of counsel.
 Robert Howard, New York City, for appellee.
 Before HASTIE, VAN DUSEN and ADAMS, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 The question here is whether, in a contempt proceeding arising from the failure to comply with a referee's turnover order, a district court may allow a purchaser of goods from a receiver a credit for counsel fees incurred in attempting to resolve difficulties relating to the handling of a check not conforming to the receiver's requirements.
 
 
 2
 Contemporary Apparel, the debtor, filed on April 29, 1970, a petition for an arrangement under Chapter XI of the Bankruptcy Act. Shortly thereafter, Zelman Scheck offered to purchase from the receiver a quantity of slacks for an agreed price of $3,565.00. The bankruptcy court authorized this sale, among others, by an order in which it expressly retained jurisdiction over "any buyer." The purchase price was to be paid by certified check payable to the receiver and given to the common carrier delivering the goods. However, Scheck obtained a certified check made payable to his order, rather than to the order of the receiver, and failed to endorse it in blank or to the receiver. Scheck gave the check to the common carrier, the receiver did not acknowledge receipt of it, and the check was not presented to the bank for payment.[1]
 
 
 3
 After being notified of the non-receipt of the check, Scheck contacted his counsel who attempted to secure the release of the funds earmarked by the bank for payment of the certified check. In the meantime, while seeking to dispel the uncertainty created by the check's apparent disappearance, Scheck refused to forward the purchase price to the receiver. When the receiver pressed for payment, Scheck then sought to set-off against the purchase price the expenses he incurred while endeavoring to avoid possible adverse consequences resulting from the disappearance of the certified check.
 
 
 4
 After a hearing, the referee issued a turnover order that required Scheck to pay to the receiver the purchase price of $3,565.00 and disallowed any deduction for counsel fees. Despite the turnover order and his failure to take an appeal therefrom, Scheck persisted in his refusal to pay the moneys. The referee then filed a certificate of facts showing contempt. At the hearing on contempt, only counsel for Scheck appeared; counsel for the receiver, because of illness, was unable to be present. The district court, nonetheless, proceeded with the hearing and ordered that upon Scheck's payment of $2,600.00 to the receiver, not the $3,565.00 mandated by the referee, the order to show cause why he should not be held in contempt would be discharged. Thus the district court allowed Scheck a $965.00 credit, apparently for counsel fees. It is from the order of the district court providing for the $965.00 credit that the receiver appeals.
 
 
 5
 The receiver contends that Scheck's failure to appeal the referee's turnover order in accordance with 11 U.S.C. Sec. 67(c)[2] made that order res judicata for purposes of the subsequent contempt proceeding. Hence the district court, the receiver asserts, was without authority to modify the referee's order. Relying on Penfield Company v. Securities & Exchange Commission,[3] the receiver suggests that it was the district court's duty to impose sanctions to compel compliance with the referee's turnover order.
 
 
 6
 Scheck sets forth a series of contentions in support of the district court's action. First, he challenges the authority of the referee to issue the turnover order itself, stating that ". . . never before has this type of summary jurisdiction been permitted to extend to an innocent purchaser of goods from a bankrupt estate who did, in fact, pay out the money for the purchase, with no intention of ever not to pay for the goods."[4] Second, Scheck contends that the purchase price was not a proper object of a turnover order because the moneys designated for payment of the purchase price were subject to adverse claims and, therefore, could not be regarded as part of the debtor's estate. Third, Scheck points out that the district court had the power to determine whether a contempt exists,[5] and it follows that it was within the authority of the district court to modify the turnover order in the manner done here because Scheck had presented evidence that the fund, represented by the certified check, was depleted. Finally, Scheck states that the legal fees he incurred were for the benefit of other persons having claims against Contemporary Apparel and, therefore, were properly chargeable against his $3,565.00 debt.
 
 
 7
 We initially address the two issues raised by Scheck that ostensibly related to the jurisdiction, or authority, of the referee to issue the turnover order in the circumstances present here.[6]
 
 
 8
 First, the issuance of a turnover order directed against a person allegedly owing a debt to a receiver may be beyond the competence of the referee,[7] thereby constituting jurisdictional error. However, we need not determine the extent of a referee's authority when confronted with a contested debt because Scheck's situation is not merely that of an alleged debtor of the receiver. Rather, Scheck's counsel conceded at the hearing on the contempt petition that Scheck, in fact, owed $3,565.00.[8] Thus the dispute here relates not to Scheck's obligation to the receiver for the full purchase price, the subject of the turnover order, but to the receiver's potential liability for expenses incurred by Scheck in connection with the mistransmission of the certified check.
 
 
 9
 Second, we fail to see how the acquisition of a certified check-that allegedly segregated the moneys owed to the receiver from Scheck's general funds-thereby rendered the legal services provided at Scheck's behest an obligation of the alleged fund and not of Scheck himself. Even if we were to conclude that the receiver's claim was limited to moneys represented by the certified check, no one has contended that Scheck's counsel must be content with whatever recovery he receives from the fund, or that counsel must first look to the fund before seeking the balance from Scheck. Certainly Scheck's counsel has a personal claim against Scheck. If, in fact, there were adverse claims to the $3,565.00-for example, another party claims the slacks sold to Scheck belong to him rather than to the receiver-the referee would not be able to enter a turnover order.[9] No one, however, has interposed a claim that he, instead of the receiver, is entitled to the proceeds from the sale of these slacks.
 
 
 10
 Before dealing with Scheck's third contention, it is necessary briefly to outline the district court's role when asked, in a contempt proceeding, to impose sanctions for non-compliance with a turnover order. It is well established that issues decided in the turnover proceeding and not appealed pursuant to 11 U.S.C. Sec. 67(c) may not be relitigated. Maggio v. Zeitz[10] represents the Supreme Court's most comprehensive statement concerning the parameters of the district court's inquiry in a contempt proceeding when asked to enforce a turnover order through the application of sanctions. In large part, to foster efficient and speedy progress toward the goal of equitably adjusting the financial situation of insolvent persons, a district court, in a contempt proceeding to enforce a turnover order, has quite limited power to review factual and legal conclusions, aside from questions dealing with jurisdiction, that led to the issuance of the turnover order:
 
 
 11
 . . . It is clear . . . that the turnover proceeding is a separate one and, when completed and terminated in a final order, it becomes res judicata and not subject to collateral attack in the contempt proceedings.
 
 
 
 * * *
 It would be a disservice to the law if we were to depart from the longstanding rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbiding an act should not be so inconclusive as to foster experimentation with disobedience.[11]
 Maggio also establishes that the district court is to satisfy itself that the person against whom the turnover order is directed still possesses the property, or, as here, is able to pay the admitted debt, that is the object of the order. The district court, in other words, is not to command anyone to do the impossible and then apply sanctions pursuant to such command.[12]
 With the district court's role in contempt proceedings, as expressed in Maggio, in mind, we now turn to Scheck's third contention. Had Scheck been unable to comply with the turnover order of the referee at the time of the contempt proceeding, the district court would have committed error if it had attempted to enforce compliance. But since we cannot subscribe to the view that the mere acquisition of the certified check limited the receiver's right to moneys represented by that check and that the claims of Scheck's counsel were similarly limited to such moneys, we reject Scheck's contention that the district court's order is supported by his assertion that the "property" subject to the turnover order, the "fund," was depleted. In addition, no evidence has been presented indicating that Scheck was, or is, unable to pay the $3,565.00 debt.
 Scheck's final contention that the legal services were performed for the benefit of other claimants was not open for consideration by the district court and, therefore, may not be used on this appeal to justify the district court's order. The principle enunciated in Maggio precludes such reconsideration, since the referee addressed and disposed of this argument in his opinion supporting the turnover.[13]
 Thus, none of Scheck's claims sustains the allowance of a $965.00 counsel fee from the funds due the receiver. Although the district court has broad discretion in choosing among sanctions to impose upon the contemnor,[14] such discretion does not extend to modification of a turnover order unencumbered by jurisdictional defects, once the time for appeal from the order has expired. If Scheck had established his inability to pay more than $2,600.00, the district court could, no doubt, condition the imposition of sanctions on the nonpayment of that amount. But absent proof relating to an incapacity to make full payment, the district court may not relieve Scheck of his obligation.[15] The district court must, therefore, reconsider the referee's certificate of facts showing contempt, and then provide whatever remedy it believes, in its sound judgment, is warranted.[16]
 Accordingly, we vacate the district court's order and remand for further proceedings consistent with this opinion.
 
 
 [1]
 It is not clear from the record which of the parties is responsible for the difficulties surrounding the attempted payment by certified check. The referee found that Scheck failed to follow the receiver's instructions and that the check did not reach the hands of the receiver. The district court in its order requiring Scheck to pay to the receiver the purchase price less $965 counsel fees stated that the "legal problems [were] caused by errors in the instructions in the bill of lading from the receiver regarding the manner in which the certified check paying for the goods should be made out, and the misplacing of the check by the receiver." In re Contemporary Apparel, Inc., No. 70-231 (E.D.Pa. Feb. 13, 1973)
 
 
 [2]
 Section 67(c) provides, in part, as follows:
 A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at hearing.
 
 
 [3]
 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947)
 
 
 [4]
 Brief for Appellee at 9-10
 
 
 [5]
 See 11 U.S.C. Sec. 69
 
 
 [6]
 We have some question whether Scheck's objections to the jurisdiction of the referee were timely raised as required by Sec. 2(7) of the Bankruptcy Act, 11 U.S.C. Sec. 11(7). Since, however, the issue was neither briefed nor argued, we decline to dispose of Scheck's jurisdictional contentions on the basis of this section
 
 
 [7]
 See In re Dickens, 175 F. 808, 811 (S.D. Ala.1909)
 
 
 [8]
 In re Contemporary Apparel, Inc., No. 70-231 (E.D.Pa. Feb. 13, 1973)
 
 
 [9]
 See Mueller v. Nugent, 184 U.S. 1, 15, 22 S.Ct. 269, 46 L.Ed. 405 (1902)
 
 
 [10]
 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948)
 
 
 [11]
 Id. at 68-69, 68 S.Ct. at 407
 
 
 [12]
 Id. at 72, 68 S.Ct. 401
 
 
 [13]
 Id. at 68-69, 68 S.Ct. 401
 
 
 [14]
 11 U.S.C. Sec. 69(b)
 
 
 [15]
 Cf. O'Hagan v. Blythe, 354 F.2d 83 (2d Cir. 1965)
 
 
 [16]
 Cf. Penfield Co. v. SEC, 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947)