**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-3806 & 17-1140
_____

SECRETARY UNITED STATES DEPARTMENT OF LABOR

v.

JOHN J. KORESKO; JEANNE D. BONNEY; PENN MONT BENEFIT SERVICES
INC; KORESKO & ASSOCIATES, P.C.; KORESKO LAW FIRM, P.C.; PENN
PUBLIC TRUST; REGIONAL EMPLOYERS ASSURANCE LEAGUES
VOLUNTARY EMPLOYEES BENEFICIARY ASSOCIATION TRUST; SINGLE
EMPLOYER WELFARE BENEFIT PLAN TRUST

John J. Koresko, V,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-09-cv-00988)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2018
_____

Before: HARDIMAN, VANASKIE and SHWARTZ, *Circuit Judges*

(Filed: March 23, 2018)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

_____

VANASKIE, *Circuit Judge.*

Appellant John J. Koresko, V, proceeding *pro se*, appeals the District Court's August 31, 2016, Order denying his motion for reconsideration of its April 26, 2016, order of contempt. The Court held Koresko in civil contempt after finding that he failed to comply with Court orders compelling him to turn over assets he had misappropriated from employee welfare benefit plans protected by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001, *et seq.* Koresko also appeals the District Court's December 5, 2016, Order denying his motion to quash a writ of garnishment issued in aid of collecting the sizeable judgment entered against Koresko. Discerning no abuse of discretion in the District Court's decisions, we will affirm both orders.

## I.[1]

In 2009, at the time this litigation began, Koresko was a licensed attorney and certified public accountant, and was also the President of PennMont Benefit Services Inc., a Pennsylvania corporation that conducts administrative services for trusts. The United States Department of Labor ("DOL") filed suit against Koresko, another named individual, and related entities for alleged violations of ERISA related to their administration of the Regional Employers Assurance Leagues Voluntary Employees'

---

[1] Our factual recitation is limited to the matters that are relevant to this appeal.

Beneficiary Association ("REAL VEBA") and the Single Employer Welfare Benefit Plan Trust ("SEWBPT") (collectively, the "Plans"). Koresko entered his appearance as counsel for himself and all named defendants.

In 2013, the DOL sought preliminary injunctive relief to remove Koresko from positions of authority over the Plans, to require him to restore Plan assets, and to prevent him from further depleting the assets. The DOL also sought the appointment of an interim Independent Fiduciary to administer the Plans. In support of its motion, the DOL asserted that Koresko had diverted Plan assets for improper purposes, such as buying condominiums on the Caribbean Island of Nevis and transferring $1.68 million from Plan accounts in the United States to a Nevis-based account named the "John Koresko Client Escrow." (Supp. App. at 3.) During a hearing on the motion, Koresko admitted to transferring the $1.68 million and purchasing the Nevis real estate with Plan assets. By Order dated September 16, 2013, the District Court granted the DOL's motion. Specifically, the District Court enjoined Koresko from serving the Plans and their participants in any capacity, appointed an interim Independent Fiduciary to administer the Plans, and directed Koresko to return the $1.68 million deposited in a Nevisian bank and transfer all rights in the Nevis real estate properties to the Independent Fiduciary. Additionally, Koresko was required to provide both the District Court and the Independent Fiduciary with the "name, account number, and location of any accounts containing [P]lan assets and to identify and provide the location and deeds . . . of all real or personal property purchased with [P]lan assets" within five business days. (Supp. App. at 21-22.)

3

Koresko failed to comply with the September 16, 2013, Order, leading the DOL to file its first motion for civil contempt on September 27, 2013. The Court issued an order to show cause as to why Koresko should not be held in civil contempt, and a hearing was scheduled. Counsel then entered his appearance on behalf of Koresko.

Koresko was deposed while the contempt motion was pending. He testified that he had originally purchased real estate in Nevis as a "trust investment," (Supp. App. at 107, 109), and that he transferred $1.68 million into the Nevis-based "John Koresko Client Escrow" account to fund the construction of condominium properties. Koresko also admitted that, after the District Court's September 16, 2013, Order requiring him to return the Plan funds to the Independent Fiduciary, he traveled to Nevis for the purpose of transferring the funds to the Royal Bank of Trinidad and Tobago.

There ensued a number of court proceedings concerning Koresko's failure to return the misappropriated funds and to transfer title to the Nevis condominiums to the Court-appointed Independent Fiduciary. On June 27, 2014, the District Court entered an order requiring Koresko to wire transfer funds from the Nevis account to the Independent Fiduciary by July 14, 2014. Three days before the deadline, Koresko filed a declaration with the Court stating that the Nevis bank would not wire the funds to the United States as ordered. The District Court then granted leave for Koresko to travel to Nevis to personally arrange for the transfer of funds, but Koresko was involved in a car accident and could not complete the transfer.

On September 10, 2014, the District Court denied the DOL's first motion for contempt, "except with respect to Mr. Koresko's failure to transfer to the United States

4

the accounts held in the Nevis branch of the Royal Bank of Trinidad and Tobago."

(Supp. App. at 54.) The order gave Koresko until October 3, 2014, to effectuate the transfer. The Court thereafter extended its deadline to October 31, 2014, but required Koresko to sign a power of attorney authorizing the Independent Fiduciary to gain control of the accounts in the event that Koresko could not transfer the funds in time. Koresko eventually executed a power of attorney approved by the Independent Fiduciary's Nevisian lawyer, but the power of attorney did not enable the Independent Fiduciary to effectuate the transfer of funds or real property.

On February 6, 2015, following a bench trial, the District Court issued a comprehensive opinion on the merits of the DOL's claims. The District Court concluded that Koresko and the other defendants had breached their fiduciary duties of loyalty and prudence by misappropriating and diverting Plan assets, as well as engaging in prohibited self-dealing. On March 13, 2015, the District Court entered judgment against Koresko and his co-defendants in the amount of $38,417,109.63.[2] This amount did not include the funds that Koresko wrongfully transferred to the Royal Bank of Trinidad and Tobago and that were the subject of the pending contempt motion.

Unable to secure the return of the Plan assets held in Nevis, the DOL filed its second contempt motion on February 9, 2016. On March 31, 2016, the District Court

---

[2] We affirmed the District Court's judgment. *See Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230 (3d Cir. 2016). We also affirmed the September 16, 2013, Order to the extent that Koresko challenged the appointment of an Independent Fiduciary.

5

entered an order requiring Koresko to file a response to the DOL's contempt motion by April 14, 2016, and scheduled a hearing for April 26, 2016.

Koresko failed to respond to the contempt motion, and neither Koresko nor his attorney appeared at the April 26 contempt hearing. Accordingly, the District Court held Koresko in contempt. As summarized by the District Court in denying Koresko's motion to reconsider the contempt order, the Court made the following findings at the conclusion of the April 26 hearing:

> 1. On September 16, 2013, the Court issued an Order directing Defendant Koresko to turn over all trust assets and assign all rights in the Nevis condominiums to the Independent Fiduciary.
>
> 2. Koresko was present at the September 16, 2013 hearing that preceded the Court's Order and he took part in the argument between the parties regarding the language of the Court's Order.
>
> 3. Koresko submitted a declaration acknowledging his knowledge of the Court's September 16, 2013 Order, and he appealed the Court's September 16, 2013 Order. . . .
>
> 4. Koresko was represented by counsel from the law firm of Dilworth Paxson, who responded on his behalf to the DOL's first motion for contempt and related supplemental briefings arising from the Court's September 16, 2013, Order.
>
> 5. On June 27, 2014, the Court issued an Order directing Koresko to complete a wire transfer of the funds in Nevis to the Independent Fiduciary.
>
> 6. On September 10, 2014, the Court issued an Order directing Koresko to transfer the Nevis accounts to the United States no later than October 3, 2014.

7. On October 15, 2014, the Court issued an Order directing Koresko to transfer the accounts from Nevis to the United States no later than October 31, 2014.

8. On March 13, 2015, the Court issued an Order directing Koresko to immediately turn over all REAL VEBA or SEWBPT assets remaining in his custody or control to the Independent Fiduciary.

9. Koresko participated in the Court's Case Management/Electronic Case Filing system, by which he was served at his email account . . . pursuant to Local Rule 5.1.2.(4)(c).

10. Koresko used trust assets in the amount of $3.372 million to purchase real property in Nevis at the Nelson Springs resort and moved $1.68 million from bank accounts in the United States containing trust assets to an account in Nevis in the name of "John J. Koresko Client Escrow."

11. Koresko failed to surrender to the Independent Fiduciary the trust assets that were transferred first to the Scotia Bank and then to the Royal Bank of Trinidad and Tobago. Koresko retained custody and control over these funds throughout the pendency of this case, up to and including the Court's final judgment and Order in March 2015. Koresko has the present ability to transfer these funds, but has refused to do so.

12. Koresko failed to assign all rights to the real property in Nevis to the Independent Fiduciary. Koresko has the present ability to assign whatever rights he has in the properties to the Independent Fiduciary, but has refused to do so.

(App. at 36-37) (internal citations omitted).

Based on these findings, the Court determined that the DOL proved, through clear and convincing evidence, that: (1) Koresko had knowledge of the Court's September 16, 2013, Order; (2) Koresko had knowledge of four subsequent orders directing Koresko to comply with the original order; and (3) Koresko had a present ability to comply with the

7

Court's orders, but failed to do so. The Court directed Koresko to surrender to the United States Marshals Service on May 4, 2016. Koresko was ordered to remain in custody until such time as he had transferred the money and title to the real estate held in his name in Nevis to the Independent Fiduciary. Koresko, however, failed to self-surrender by the required date, and the Court issued a warrant for his arrest. Koresko was subsequently arrested and placed in custody, where he remains.

On May 17, 2016, Koresko's attorney moved for relief from the contempt order, which the Court denied.[3] The Court then held four status conferences regarding Koresko's civil contempt, which he refused to purge. In the meantime, Koresko filed seven documents that the District Court collectively construed as Koresko's motion for reconsideration of the Court's order of civil contempt. In the documents, Koresko appeared to challenge the Court's general authority to impose civil contempt orders, an argument the Court deemed meritless. Koresko also argued that there was improper notice of the contempt proceedings, which the Court rejected on the ground that the DOL properly served Koresko's attorney pursuant to the Federal Rules of Civil Procedure with a copy of the second contempt motion, and that Koresko also received electronic service of all documents. Accordingly, on August 31, 2016, the District Court denied Koresko's motion for reconsideration. Koresko timely appealed.

---

[3] Koresko's attorney withdrew his appearance on May 26, 2016, and Koresko has since proceeded *pro se*.

After final judgment was entered, the DOL represented to the District Court that Koresko had deposited funds with Jetstream Escrow & Title Services, Inc., in Oklahoma ("Jetstream Escrow"). On September 23, 2016, the Court issued a writ of continuing garnishment to retrieve funds from the Jetstream Escrow. In response to the garnishment order, Jetstream Escrow informed the Court that Koresko held a $50,000 non-exempt interest in the escrow account. Koresko moved to quash the writ, which the Court denied on December 5, 2016. Koresko also timely appealed this order.

## II.

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), and, nd we have jurisdiction under 28 U.S.C. § 1291. We review the denial of a motion for reconsideration for abuse of discretion, *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1203 (3d Cir. 1995), and we review the District Court's factual conclusions for clear error. *Id.* (citing *Ram Constr. Co., Inc. v. Am. States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir. 1984)). We review the District Court's garnishment order for abuse of discretion. *United States v. Clayton*, 613 F.3d 592, 595 (5th Cir. 2010).

## III.

### A.

A defendant may move for reconsideration of a court's order, but "[t]he standard for granting such a motion is strict . . . ." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Velazquez v. UPMC Bedford Mem'l Hosp.*, 338 F. Supp. 2d 609, 611 (W.D. Pa. 2004) ("District Courts grant motions for reconsideration sparingly as

9

there is an interest in finality."). Motions for reconsideration may be granted only "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

The crux of Koresko's argument is that the District Court wrongfully imprisoned him for civil contempt because, according to Koresko, he "did not disobey" the Court's orders. (Appellant's Br. at 4.) Accordingly, Koresko argues for his immediate release from prison.

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citations omitted). A civil contempt order may issue upon a court finding: "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009) (citation and internal quotation marks omitted). The movant must prove these elements by "clear and convincing evidence, and ambiguities must be resolved in favor of the party charged with contempt." *John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (citations and internal quotation marks omitted). All three conditions for issuance of a contempt order were satisfied by evidence that is indeed clear and convincing.

First, the District Court's orders requiring the return of Plan assets were valid. The DOL is authorized by 29 U.S.C. §§ 1132(a)(2) and (a)(5) to obtain appropriate equitable relief to redress a breach of fiduciary duty by a person in Koresko's position in relation to the Plans. And, "[a] federal court enforcing fiduciary obligations under

10

ERISA is . . . given broad equitable powers to implement its remedial decrees."

*Delgrosso v. Spang & Co.*, 769 F.2d 928, 937 (3d Cir. 1985). Return of Plan assets was well within the District Court's remedial authority.

Koresko challenges the validity of the contempt order by arguing that it unlawfully imprisoned him for collection of a money judgment. *See* 28 U.S.C. § 2007(a) ("A person shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State wherein imprisonment for debt has been abolished."); *see also Colburn v. Colburn*, 123 A. 775, 775-76 (Pa. 1924) (noting Pennsylvania's prohibition on imprisonment for recovery of a money judgment stemming from a contract). There is a difference, however, between imprisonment for debt, and imprisonment for failure to comply with a court order, the latter being permissible. *See United States v. Harris*, 582 F.3d 512, 515 (3d Cir. 2009) ("With civil contempt, the contemnor will be released [from prison] subject to compliance with some condition. He is thus understood, in a by-now familiar observation, to carr[y] the keys of his prison in his own pocket." (citation and internal quotation marks omitted)); *see also Santibanez v. Wier McMahon & Co.*, 105 F.3d 234 (5th Cir. 1997); *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57 (3d Cir. 1991); *Usery v. Fisher*, 565 F.2d 137 (10th Cir. 1977). The District Court made clear that Koresko was imprisoned for failure to comply with its orders which, among other things, required him to turn over Plan assets to the Independent Fiduciary. We thus reject Koresko's argument that his imprisonment for civil contempt was for collection of a money judgment. In this regard, it bears emphasizing that the final judgment entered against him did not include the money he

11

wrongfully transferred to the Royal Bank of Trinidad and Tobago or transfer of title to the Nevisian real estate, both of which were covered by the September 16, 2013, Order and subsequent confirming orders.

Second, the District Court had an ample basis for concluding that Koresko had knowledge of the orders at issue. Koresko represented himself when the September 16, 2013, Order was issued, he received notice via the Court's Electronic Case Filing System, and he participated in multiple proceedings after the September 16, 2013, Order that concerned enforcement of the directives that he return Plan assets from Nevis.

And finally, Koresko cannot dispute that he has not complied with the orders. He has not transferred the funds from the Royal Bank of Trinidad and Tobago, and he has not transferred to the Independent Fiduciary title to the Nevis condominiums. Accordingly, the District Court did not abuse its discretion in holding Koresko in contempt.

Aside from attacking the underlying contempt order, Koresko raises other arguments, which we similarly find to be meritless. Koresko argues that the District Court should have held a "turnover proceeding" to determine whether the Nevis property was in Koresko's possession and control, but we have reserved this principle for bankruptcy proceedings, a context that requires us to determine "whether the bankrupt had property within his possession or control at the date of bankruptcy which he had not delivered to his trustee." *Toplitz v. Walser*, 27 F.2d 196, 197 (3d Cir. 1928); *see also In re Contemporary Apparel, Inc.*, 488 F.2d 794, 798 (3d Cir. 1973); *Price v. Kosmin*, 149

12

F.2d 102, 104 (3d Cir. 1945). As such, we deem this type of hearing inapplicable to Koresko's case.

Koresko also argues that he was denied due process during the contempt proceedings. We have observed that due process mandates "notice and a hearing before a finding of contempt is made and before the imposition of contempt sanctions so that the parties 'have an opportunity to explain the conduct deemed deficient . . . and that a record will be available to facilitate appellate review.'" *Harris v. City of Philadelphia*, 47 F.3d 1311, 1322 (3d Cir. 1995) (quoting *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1127 (3d Cir. 1990)). As reflected in the record, Koresko received adequate notice of the District Court's scheduled contempt hearing and resulting order. The contempt hearing afforded Koresko an opportunity to be heard, but he chose not to attend, and he also chose not to object in writing. Significantly, Koresko was still represented by counsel when the 2016 contempt proceedings were conducted.

Finally, Koresko argues that the District Court's March 13, 2015, final decision on the merits, where the Court found him and other defendants liable for $38.4 million stemming from ERISA violations, "swallowed up" the September 16, 2013, Order. (Appellant's Br. at 38) (citation omitted). But the District Court was careful to note that the money and property in Nevis were not subsumed within the judgment on the merits. The September 16, 2013, Order remained in effect and was not rendered moot by the judgment on the merits.

In sum, we hold that the District Court did not abuse its discretion in denying Koresko's motion for reconsideration, as Koresko has not demonstrated a manifest error

13

of law or fact in the Court's contempt order, and has not presented any newly discovered evidence that is relevant to his appeal.[4]

**B.**

We next address the District Court's denial of Koresko's motion to quash the writ of garnishment. A breaching fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ." 29 U.S.C. § 1109(a). "A court may issue a writ of garnishment against property . . . in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a). Moreover, nationwide execution of a garnishment order in favor of the United States is appropriate because "[a] writ of execution on a judgment obtained for the use of the United States in any court thereof shall be issued from and made returnable to the court which rendered the judgment, but may be executed in any other State . . . ." 28 U.S.C. § 2413. "In garnishment proceedings, the Defendant bears the burden of establishing that his property is exempt." *United States v. King*, No. 08-66-01, 2012 WL 1080297, at *3 (E.D. Pa. Apr. 2, 2012) (citing 28 U.S.C. § 3014(b)(2)).

---

[4] In his reply brief, Koresko cites two recent Supreme Court decisions, *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), for the proposition that the DOL lacked standing to seek relief against him because, he contends, the Plans did not sustain a pecuniary loss. While instructive in the areas of immigration (*Ziglar*) and the Fair Credit Reporting Act (*Spokeo, Inc.*), these cases have nothing to do with standing to obtain redress for an ERISA fiduciary's breach of duties. As we explained in *Edmonson v. Lincoln National Life Insurance*, 725 F.3d 406, 417 (3d Cir. 2013), "a financial loss is not a prerequisite for standing to bring a disgorgement claim under ERISA." Nothing in *Ziglar* or *Spokeo* alters that conclusion.

14

Koresko argues that a final monetary judgment in favor of the DOL never existed, and that the District Court "never directed [him] to pay a dime to the [DOL]." (Appellant's Br. at 52.) Moreover, Koresko argues that the DOL had no authority under ERISA to collect a monetary judgment for the Plan participants.

Koresko is mistaken. The District Court found, and we affirmed, that Koresko committed breaches of his fiduciary duties, which resulted in losses to the Plans and their participants and beneficiaries. Pursuant to ERISA, the DOL has authority to seek "appropriate relief" under 29 U.S.C. § 1132(a)(2), including removal of a fiduciary and restoration of plan assets. *Id.* § 1109. The DOL demanded payment of the outstanding judgment on behalf of Plan participants, and representatives from the Jetstream Escrow in Oklahoma asserted that Koresko held a $50,000 non-exempt interest in the account. We do not find any procedural defects in the DOL's method of collecting the judgment on behalf of the Plans. And the DOL properly sought to execute the garnishment order in Oklahoma because nationwide execution is appropriate. We thus find that the District Court did not abuse its discretion by entering the writ of continuing garnishment.

**IV.**

Accordingly, we will affirm the orders of the District Court entered on August 31, 2016, and December 6, 2016.